**In re MANDALAY SHORES COOPERATIVE HOUSING ASSOCIATION, INC.**

Nos. 86 C 942, 85 B 14953.

United States District Court, N.D. Illinois, E.D.

July 30, 1986.

Gregory K. Stern, Chicago, Ill., for appellant.

Bruce E. de Medici, Larry G. Ramey, Chicago, Ill., for U.S. Trustee.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

■ Mandalay Shores Cooperative Housing Association, Inc. ("Mandalay") appeals from the December 19, 1985 order of Bankruptcy Judge Robert L. Eisen (the "Order") dismissing Mandalay's voluntary petition (the "Petition") under Chapter 11 of the Bankruptcy Reform Act of 1978 (the "Code"), 11 U.S.C. §§ 1101–1174.[1] On appeal Mandalay presents[2] 13 grounds for reversing the Order and reinstating the Petition. Stripped down to essentials, those grounds are:

1. Mandalay filed the Petition in good faith.

2. Dismissal of Mandalay's earlier petition (the "Florida Petition") is not res judicata as to the Petition.

3. Dismissal of the Petition with prejudice was an abuse of discretion.

4. Judge Eisen abused his discretion by dismissing the Petition without giving 20 days' notice under Bankruptcy Rule 2002(a)(5).

5. Judge Eisen improperly allowed creditors' counsel William Borja ("Borja") to appear and present the motion to dismiss.

United States Trustee Susan Pierson DeWitt ("Trustee"), appellee here, disputes Mandalay's assertions but asks for clarification or qualification of Judge Eisen's "with prejudice" dismissal. For the reasons stated in this memorandum opinion and order, the Order is affirmed.

1. Citations to individual Code sections will follow Title 11's numbering and take the form "Section—."

2. "Presents" does Mandalay too much credit. There is considerable overlap in its list (Mandalay Mem. 1–2) of "Issues Presented." More importantly, Mandalay's memorandum does not even bother to flesh out several of the points it lists. On an appeal a court is not obliged to consider grounds raised but presented in only a "perfunctory and underdeveloped" manner in the briefs. *National Metalcrafters v. McNeil,* 784 F.2d 817, 825 (7th Cir.1986), quoting *Hershinow v. Bonamarte,* 735 F.2d 264, 266 (7th Cir.1984). Where an appellant gives his or her claim short (or no) shrift, this Court has discretion to do the same.

844

### Facts [3]

Mandalay is a Florida nonprofit corporation organized in the late 1970s by the tenants of Mandalay Shores, an apartment house complex in Clearwater, Florida. Its purpose was to buy Mandalay Shores, making the (mostly elderly) tenants condominium owners and staving off purchase by a private developer likely to raise the rents. Mandalay was capitalized with about $1 million collected from the tenants, each of whom paid about $3,200.

Mandalay's attempt to purchase the apartment house complex from its owner, the Department of Housing and Urban Development ("HUD"), was unsuccessful. After negotiations fizzled, Mandalay filed two federal lawsuits under the Clean Air Act and the National Housing Act to block sale of the building to private developers. That litigation, however, also failed in its purpose. See *Mandalay Shores Cooperative Housing Association, Inc. v. Pierce*, 667 F.2d 1195 (5th Cir.), *cert. denied*, 459 U.S. 1036, 103 S.Ct. 446, 74 L.Ed.2d 602 (1982).

Seeing no light at the end of the tunnel, some tenants asked for their money back. Some capital contributions were returned, but not all who asked got paid. In late 1979 tenants seeking repayment brought suit in Florida state court, resulting in appointment of a receiver, the freezing of Mandalay's assets and an injunction against further expenditures. In response Mandalay sued the state-court judge and the receiver. After that suit was dismissed and several other attempts at blocking state-court action failed, Mandalay filed the Florida Petition (*Mandalay III*, 22 B.R. at 204):

> When it became obvious that [Mandalay] would not be able to obtain any relief in the state court, it filed its voluntary petition for relief on April 3, 1981, hoping that the protective umbrella, available to

debtors in the Bankruptcy Court, would finally furnish the necessary protection and a breathing spell. Most importantly, it hoped the filing would enable the management to use the extraordinary powers of a debtor-in-possession to achieve what it was not able to achieve through extensive and complex litigations in several nonbankruptcy forums.

That eventuality was cold comfort to Mandalay's dissenting members, and several of them filed a motion to dismiss the Florida Petition or, in the alternative, to convert it to a Chapter 7 liquidation proceeding.

After rejecting conversion on the ground Section 1112(c) prohibits involuntary conversion as to a "non-moneyed, non-business or non-commercial corporation" (*Mandalay III*, 22 B.R. at 205–06), the Florida bankruptcy court granted the dissenters' dismissal motion July 13, 1982. Though it recognized the potential "race to the courthouse" by Mandalay members seeking return of their money was a factor weighing against dismissal (*id.* at 207), the court said (*id.* at 206):

> To view this case in the context of a Chapter 11, one can hardly doubt or even wonder if this case is or if it ever was a business reorganization case. This Debtor is not, and has never been, engaged in the conduct of any ongoing business in an orthodox sense. Its only business has been, so far, defending or prosecuting law suits. However, the defense or prosecution of litigation by a debtor seeking a reorganization under Chapter 11 of the Code does not bear any resemblance to a business operation, although it is clear that litigation is a substantial and important business for counsel for [Mandalay]. However, it is not the attorneys of [Mandalay] who are the debtors in a Chapter 11 case and, as far as it appears from the record, they are not in need of any relief under Chapter 11 of the Code, although applications for interim attorney fees

3. Because Mandalay's history through mid–1982 is recounted in *In re Mandalay Shores Cooperative Housing Ass'n* ("*Mandalay III*"), 22 B.R. 202 (Bankr.M.D.Fla.1982), it need only be briefly summarized here. See also *Mandalay I*, 17 B.R. 31 (Bankr.M.D.Fla.1981); *Mandalay II*, 17 B.R. 33 (Bankr.M.D.Fla.1981); *Mandalay V*, 25 B.R. 533 (Bankr.M.D.Fla.1982); *Mandalay VI*, 44 B.R. 1017 (Bankr.M.D.Fla.1984).

filed by them presently pending before this Court exceed $200,000. It has been recognized under the pre-Code law that the relief Chapters of the Bankruptcy Act of 1898 were not designed as relief chapters for attorneys, *In re Orbit Liquor Store,* 439 F.2d 1351 (5th Cir.1971). There is nothing in the Bankruptcy Code or in the legislative history of the Code to indicate that this basic, self-evident principle is no longer valid in spite of the more liberal standard placed on allowance of attorney fees by Congress set forth in § 330 of the Code.

Since the case cannot be converted to a Chapter 7 case for reasons stated, dismissal appears to be the only alternative.

But for reasons not entirely clear on the present record, the Florida Petition remained alive.[4] On November 16, 1982 the bankruptcy court granted Mandalay's application for authorization to acquire a different apartment building ("Tanglewood Apartments") *(Mandalay IV,* No. 81–547, slip op. (Bankr.M.D.Fla. Nov. 16, 1982)) "so long as such activity does not invade, jeopardize, or otherwise encumber any of the assets of the corporation" *(id.* at 2). That purchase transaction also wound up in litigation and has never been consummated.[5]

On October 25, 1985 the Florida Petition was again dismissed *(Mandalay VII,* No. 81–547, slip op. (Bankr.M.D.Fla. Oct. 25, 1985)), expressly on the ground Mandalay had failed to propose an adequate reorgani-

zation plan *(id.,* slip op. at 1). But the bankruptcy court retained jurisdiction to rule on administration-cost applications and ordered no funds be distributed until entry of a "final order" on those applications *(id.,* slip op. at 2). Mandalay's motion for rehearing was denied November 13, 1985.

Meanwhile Mandalay filed the Petition in this District's Bankruptcy Court November 4, 1985. On November 26 Borja (a member of the Florida bar) filed an "Emergency Motion to Dismiss Chapter 11 Case or, Alternatively, for Abstention" on behalf of Mandalay member Walter Smith ("Smith") and a class of other dissenting members. After recounting some of Mandalay's litigation history, Smith Motion ¶¶ 13–14 urged (emphasis in original):

13. ... As previously mentioned, the Debtors [sic] sole asset is the original monies deposited by the tenants plus accrued interest on the monies. Given the fact that the Debtor is not a business nor is it engaged in any business, save litigation, and there is no rehabilitation needed nor warranted, this constitutes cause for the immediate dismissal of the Voluntary Petition for Relief filed before this Court.

14. Filing of the *second* Voluntary Petition for Relief by the Debtor constitute[s] a bad faith filing in that it is another [fu]tile desparate [sic] attempt by the Debtor to delay and defeat the

---

**4.** *Mandalay III's* dismissal order was suspended for 20 days to allow the parties in interest to seek appointment of a trustee as an alternative to dismissal (22 Bankr. at 207). It may be the parties indeed chose that route.

**5.** Mandalay's representations before Judge Eisen as to the Tanglewood Apartments purchase are more than a little disturbing. Mandalay Vice President Charles Kelly ("Kelly") Aff. ¶ 1(c) says:

> The purchase of an apartment building located at 880 Mandalay Avenue, Clearwater Beach, Florida was merely incidental to the formation of debtor as a non-profit corporation. Purchaser has been authorized by order of court to purchase other properties and has conducted the business of purchasing other properties to wit; The Tanglewood Apartments. Authorization from the United States

Bankruptcy Court in Florida to purchase the Tanglewood Apartments is evidenced by Order of said Court [*Mandalay IV*]. The successful purchase of the Tanglewood Apartments is further evidenced by an order of specific performance for the Tanglewood Apartments annexed hereto as Appendix 3. But that specific performance order, issued March 6, 1984 by the Pinellas County, Florida Circuit Court, had been reversed on appeal October 11, 1985—fully two months *before* Kelly signed, and Mandalay's lawyer submitted, his affidavit. See *Eichhorst v. Mandalay Shores Cooperative Housing Ass'n, Inc.,* 477 So.2d 25 (Fla. App.1985), *review denied,* 486 So.2d 597 (Fla. 1986). Thus there is no "successful purchase" of the Tanglewood Apartments, and Kelly's affidavit was misleadingly false when it was filed.

lawful and legally established claims of the tenants.

On December 10, 1985 Smith also moved for change of venue back to Florida.

Judge Eisen held a hearing that day, at which Borja appeared, claiming to represent about 140 Mandalay members (Dec. 10, 1985 Tr. 14). Mandalay's counsel argued (a) Borja's appearance was improper absent designation of local counsel (*id.* at 2) and (b) his claim to represent more than "one to four to five parties" was misleading (*id.* at 14). In addition, Mandalay's counsel asserted his basis for asserting venue in this District was that Mandalay's corporate assets—principally various bank deposits and certificates—were in Chicago (*id.* at 18).

Neither Borja nor anyone else representing Mandalay members appeared at a second hearing (held December 17).[6] Judge Eisen said he was prepared to dismiss the Petition (Dec. 17, 1985 Tr. 3) but took the whole matter under advisement after Mandalay's counsel offered to prepare a written response (*id.* at 23).

### *Judge Eisen's Order*

Judge Eisen's written Order addressed only Smith's dismissal motion, the granting of which mooted all others (Order at 1). As to the merits of dismissal, Judge Eisen held Mandalay failed to meet Section 1112(b)'s implicit good-faith filing requirement (Order at 3–4):

> The only assets of the debtor are bank deposits which constitute contributions made by Association members. Moreover, the debtor has no ongoing business and Judge Paskay specifically found in his October 25, 1985 Order that the debtor has no reasonable chance of proposing a confirmable plan of reorganization. In

> fact, Judge Paskay had rejected a plan proposed by the debtor and the debtor failed to produce another one. The debtor simply will not be allowed to relitigate issues here which it has had a full opportunity to do in another bankruptcy court. To do so would be an abuse of the judicial process.

> \* \* \* \* \* \*

> The debtor also refers to the Tanglewood Apartment complex and the possibility of [Mandalay] purchasing that property. The court orders regarding that property, which orders are attached to the debtor's response, are all over two years old. The debtor had ample time to complete the purchase of the Tanglewood complex or bring the matter to the attention of the bankruptcy court in Florida.

> IT IS THEREFORE ORDERED that this bankruptcy case is dismissed, with prejudice.

As to the propriety of Borja's appearance, Order at 3–4 said:

> Debtor contends that creditor's counsel has failed to comply with local rules regarding *pro hac vice* appearances. At the December 10, 1985 hearing, this Court expressly and for good cause shown granted creditor's counsel permission to address the Court, thereby implicitly granting creditor's counsel permission to file his motions. Debtor raised an objection on these same grounds at the December 10 [sic; should be 17], 1985 hearing and it was denied at that time. The Court finds that the creditor's motion to dismiss is properly before the Court.

### *"Good Faith" Analysis* [7]

As Mandalay Mem. 10 says:

---

**6.** At the December 17, 1985 hearing counsel for Bellefonte Underwriters Insurance Company (Mandalay's D & O carrier) moved for modification of the automatic stay. In addition, counsel for Bethany Methodist Hospital (residual distributee of Mandalay's assets on dissolution) appeared in support of venue in this District. Counsel for Trustee and for the Illinois Attorney General's Office also appeared.

**7.** This discussion owes nothing to either litigant filing briefs in this Court (Mandalay and Trustee). They mistakenly joined battle on the field of subjective good faith, a battle that could force inquiry into (a) factual questions, (b) the possible need for evidentiary proceedings below and (c) other like and unlike issues—not one of which is necessary for decision under the circumstances here. This is not the first time

The primary issue in this case is whether [Mandalay's] Chapter 11 was filed in good faith.

Although the corporate-reorganization provisions of the 1898 Bankruptcy Act (the "Act") explicitly made "good faith" a condition of filing a petition (11 U.S.C. § 541 (repealed 1976), *reprinted in* 11 U.S.C.A. Appendix (1979)), the Code's reorganization section—Chapter 11—does not use that term. Instead Section 1112(b) provides:

Except as provided in subsection (c) of this section, on request of a party in interest, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—

(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

(2) inability to effectuate a plan;

(3) unreasonable delay by the debtor that is prejudicial to creditors;

(4) failure to propose a plan under section 1121 of this title within any time fixed by the court;

(5) denial of confirmation of every proposed plan and denial of a request made for additional time for filing another plan or a modification of a plan;

(6) revocation of an order of confirmation under section 1144 of this title, and denial of confirmation of another plan or a modified plan under section 1129 of this title;

(7) inability to effectuate substantial consummation of a confirmed plan;

(8) material default by the debtor with respect to a confirmed plan; or

(9) termination of a plan by reason of the occurrence of a condition specified in the plan.

Lack of "good faith" is therefore no longer a specified ground for dismissing a reorganization petition. But Section 1112(b)'s list of "for cause" grounds is in terms nonexhaustive, and courts have continued to hold good faith is an implicit prerequisite to any Chapter 11 filing. See, e.g., *Little Creek Development Co. v. Commonwealth Mortgage Corp. (In re Little Creek Development Co.)*, 779 F.2d 1068, 1071–72 (5th Cir.1986); *In re Winshall Settlor's Trust*, 758 F.2d 1136, 1137 (6th Cir.1985).

Of course the term "good faith" can be defined in several ways, and its legal significance depends on its legal context. Frequently a distinction is made between "subjective" and "objective" good faith, the former indicating an individual's actual state of mind and the latter a reasonable person's hypothetical state of mind in given circumstances. Subjective good faith without its objective counterpart is often called the "pure heart—empty head" phenomenon (*Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir.1986)).

■ Perhaps one reason Congress took the term "good faith" out of Section 1112(b) was to avoid the confusion created by intertwining subjective and objective inquiries. It may easily happen a corporation will argue it filed a petition with a pure heart, but the creditors will argue the petition was filed with an empty head.[8] Mandalay Mem. 12 says it acted in good faith because it has proceeded "in an orderly and expeditious manner" and has "duly attended" the first scheduled creditors' meeting. Of course if a debtor *refuses* to cooperate with the bankruptcy court, that

(though it may be the last, for his term is approaching its end) this Court's law clerk C. Steven Tomashefsky, Esq. has shaped (let alone reshaped) a welter of misperceived or unanalyzed arguments by lawyers into a coherent draft that rechannels the issues into their correct course, then resolves the issues as properly posed. Having said that, and this Court having reworked the draft word-by-word and sentence-by-sentence into its own opinion, this Court hastens to add that any misperceptions or lack of analysis anyone may find in this opinion is ascribable to this Court and not to Mr. Tomashefsky.

8. Especially when the debtor is a corporation, "heart" and "head" are necessarily elusive abstractions—the compounding of legal fictions.

**848**

may be "cause" for dismissal. Indeed a plaintiff's refusal to cooperate or to obey court orders may result in dismissal of any civil action. See, e.g., Fed.R.Civ.P. ("Rules") 37(b)(2)(C) and 41(b); 9 Wright & Miller, *Federal Practice and Procedure: Civil* § 2369 (1971 ed. and 1986 pocket part).

■ But mere obedience to court orders—important though that is—cannot salvage a meritless action. And what goes under the name of an "objective good faith" inquiry under Chapter 11 really amounts to analysis of the merits of the debtor's claim of entitlement to reorganization. Most of Chapter 11 deals with the mechanics of a reorganization, assuming that form of relief is appropriate. Section 1112(b) and its associated "good faith" doctrine are primarily concerned with the underlying question whether reorganization is the proper course of action in a particular debtor's case. On that score dismissal of a Chapter 11 petition—like dismissal of any lawsuit—is not imposed principally as a sanction for bad intentions or obstreperous behavior. Instead, dismissal flows from the legal determination the debtor is not entitled to the remedy it seeks.

> Thus *Winshall,* 758 F.2d at 1137 said: Factors relevant in examining whether a Chapter 11 petition has been filed in good faith include whether the debtor had any assets, whether the debtor had any business to reorganize, and whether there was a reasonable probability of a plan being proposed and confirmed.

Those factors are really equivalent to the statutory standards enumerated in Section 1112(b)(1), (2), (4), (5) and (7). They are relevant to a debtor's actual ability to benefit from reorganization (thereby benefiting its creditors), not to what the debtor subjectively may have imagined reorganization would accomplish. That sort of "good faith" inquiry asks whether or not a troubled business is worth more if reorganized than if dismantled by its creditors. As one commentator has put it (Aaron, *Bankruptcy Law Fundamentals* § 12.01, at 12–3 (1986)):

The parties to the chapter 11 case negotiate over the distribution of the going concern bonus. The going concern bonus is the presumed difference between the liquidation value of the chapter 11 debtor[']s assets and the going concern value of the synergistic whole.

Congress, in enacting Chapter 11, had precisely that sort of inquiry in mind (H.R. Rep. No. 595, 95th Cong., 2d Sess. 220 (the "House Report"), *reprinted in* 1978 U.S. Code Cong. & Ad.News 5787, 5963, 6179):

> The purpose of a business reorganization case, unlike a liquidation case, is to restructure a business's finances so that it may continue to operate, provide its employees with jobs, pay its creditors, and produce a return for its stockholders. The premise of a business reorganization is that assets that are used for production in the industry for which they were designed are more valuable than those same assets sold for scrap. Often, the return on assets that a business can produce is inadequate to compensate those who have invested in the business. Cash flow problems may develop, and require creditors of the business, both trade creditors and long-term lenders, to wait for payment of their claims. If the business can extend or reduce its debts, it often can be returned to a viable state. It is more economically efficient to reorganize than to liquidate, because it preserves jobs and assets.

From that it follows (*Little Creek,* 779 F.2d at 1073):

> Resort to the protection of the bankruptcy laws is not proper [where] there is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation, except according to the debtor's "terminal euphoria."

See also *In re Dolton Lodge Trust No. 35188,* 22 B.R. 918, 923 (Bankr.N.D.Ill. 1982) (emphasizing absence of good faith based on inability to reorganize due to absence of ongoing business).

■ Again, calling the inquiry one of "good faith" versus "bad faith" is really

unnecessary, because Section 1112(b) already lists "inability to effectuate a plan" and "absence of a reasonable likelihood of rehabilitation" as grounds for dismissal. Here Order at 3–4 focused on those issues, finding:

1. Mandalay's only assets were bank deposits.

2. There was no ongoing business.

3. There was no reasonable chance of proposing a plan, and those proposed in the past had been rejected.

It was unnecessary for Judge Eisen to spell out the obvious significance of those findings. In the House Report's terms, Mandalay has no "assets that are used for production in the industry for which they were designed." All it has is money. And the "scrap value" of money is the same as its productive value. It is not a capital asset worth more in production than in liquidation. There is no "going concern bonus."

Nor, in the absence of an ongoing business enterprise, are there jobs to preserve—other than the jobs of the law firms that have spent some seven years litigating about Mandalay (not necessarily on its behalf). And they of course are not Mandalay's employees, nor is Chapter 11 primarily designed to serve as a lawyers' full employment statute.[9] It is hardly surprising Mandalay has been unable to come up with a plan or reorganization: There is nothing to reorganize in any real economic sense. Mandalay is just a fund encumbered with debts. It has no value as a whole business over and above the value of the fund itself.

Mandalay Mem. 14 says it could reorganize if it could "escape the tyranny of 'Southern' biases." Aside from failing to identify how such asserted biases have hindered its reorganization,[10] Mandalay simply does not address the question whether reorganization is at all suited to its problems. It may perhaps honestly think reorganization is the proper nostrum for its woes (though that assumption gives it the benefit of an extraordinarily doubtful doubt), but it has said nothing to cast the slightest cloud on Judge Eisen's objective analysis of the situation. Whether the test is called "good faith" or the inability to meet the analogous Section 1112(b)(1), (2), (3) and (5) factors, Judge Eisen's legal analysis was correct.

### Res Judicata and the Florida Proceedings

█ In bankruptcy appeals, this Court reviews factual findings of the bankruptcy court under a "clearly erroneous" standard (Bankruptcy Rule 8013; *In re Boomgarden*, 780 F.2d 657, 660 (7th Cir.1985)). Judge Eisen held no evidentiary hearing and permitted no discovery, so there really is no factual record *in this case* to which a "clearly erroneous" analysis is applicable. In part he took his facts from the opinions issued by the Florida bankruptcy court, and Mandalay Mem. 19 says that is erroneous as a matter of law:

Judge Eisen's order of dismissal "with prejudice" expressly adopts the findings and conclusions of the Florida bankruptcy court, giving them *res judicata* effect.

---

**9.** See the quotation from *Mandalay III*, 22 B.R. at 206 quoted *supra*, at pages 844–45 of this opinion.

**10.** Oliver Ackerly, identified in his Aff. ¶ 1 as the "Chairman of the Creditors' Committee of [Mandalay] previously formed in conjunction with the prior Bankruptcy proceedings in the Middle District of Florida," seems to supply the rationale for that assertion (*id.* ¶ 5):

The Bankruptcy Court for the Middle District [of Florida] took the position that the Debtor must submit a plan equivalent to liquidation, a factually unfeasible alternative in light of its charitable status, or suffer dismissal. The wholly feasible and workable reorganization plan of the Debtor providing for 100% payment to the Committee was summarily rejected. Fair, economic and efficient administration cannot be had in Florida under these circumstances, as evidenced by the Florida proceedings.

But that approach only underscores the diehard contentiousness Mandalay and those promoting its excursions through the courts have exhibited over the past seven years, attacking the fairness of adverse results where an orderly appeal would have been the appropriate course of action.

Judge Eisen made no findings or conclusions of his own. By implication, he treated the Florida decision as *res judicata* even though the Florida case was dismissed "without prejudice."[11]

■ It may generally be true, as Mandalay urges, that the bare fact a prior petition was dismissed does not erect a res judicata bar to subsequent filings by the same debtor (*In re Landis,* 29 B.R. 235, 238 (Bankr. D.Kan.1983) (Chapter 13 case)). But Mandalay has not accurately described what the Order said. Judge Eisen *did* draw his own conclusions of law, holding *this* Petition was not filed in good faith. In so holding, Judge Eisen relied on the several key facts this opinion has already mentioned. As to those:

1. Mandalay does not contest the fact its only assets are bank deposits. On the contrary, Kelly Aff. ¶ 1(b) itself asserts that.

2. Mandalay's only claim to be an "ongoing business" is it "has conducted the business of purchasing other properties to wit; The Tanglewood Apartments" (*id.* ¶ 1(c)). But the Tanglewood Apartments purchase has fallen through (see n. 5), and at least since early 1984 the only "business" connected with Tanglewood Apartments has been litigation. In any case, as the earlier discussion shows, a corporation whose only asset is money in the bank is not an "ongoing business" in the sense relevant to Chapter 11. Thus Judge Eisen's second factual finding is really just a logical extension of the first.

3. *Mandalay VII* did not specifically hold Mandalay had "no reasonable chance of proposing a confirmable plan of reorganization" (see Order at 3). That statement in the order is thus clearly erroneous. But that statement as such is not the linchpin of (or essential to) Judge Eisen's analysis. As he correctly observed (*id.*), the Florida bankruptcy court rejected Mandalay's proposed plan, and Mandalay failed to produce another (see *Mandalay VII* at 1).

Clearly the Order did not hold the Petition barred by res judicata. Judge Eisen relied on facts either (1) admitted by Mandalay or (2) of public record.[12] Those facts support Judge Eisen's dismissal analysis and are not clearly erroneous—they are not erroneous at all.

Finally it is important to note what the Order did not decide. Judge Eisen made no findings as to Mandalay's *subjective* bad faith or as to the implications of its filing the Petition before the ink on *Mandalay VII* was dry. Because he did not rely on that type of bad-faith analysis, the absence of an evidentiary hearing to prove such motivation is not error. True enough, Judge Eisen did not close his eyes to Mandalay's history of litigiousness (and with open eyes, it could scarcely go unseen). His remarks on that score, however, are obiter dicta.[13]

### Dismissal with Prejudice

■ Mandalay next argues the Order's "with prejudice" dismissal was an abuse of discretion because absent evidence of "de-

11. [Footnote by this Court] Mandalay Mem. 19 does not specify which "Florida decision" it means. But neither *Mandalay III* nor *Mandalay VII,* the two Florida dismissal orders, specifies either dismissal was "without prejudice."

12. Nor is it proper to say the Order rested on the issuepreclusion (or "collateral estoppel") branch of res judicata doctrine. Judge Eisen did not rely on facts established in prior litigation (see *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984)). Instead he relied on the public record as reflected in *Mandalay VII:* the fact Mandalay had not come up with a confirmable plan.

13. Except for some later passing references in this opinion to the objective "good faith" nature of Judge Eisen's determination, this is this Court's final treatment of the absence of any holding as to Mandalay's bona fides. Before leaving that subject entirely, this Court is constrained to say again there is one glaring exception to that: the false representation referred to in n. 5. But this Court is also unwilling to prolong Mandalay's stay here by launching a sanctions hearing. It is welcome to depart the shores of Lake Michigan for other destinations—even to the shores of Mandalay.

lay, contumacious conduct, or an extreme situation" (Mem. 20) such a "drastic sanction" (*id.* ) is not warranted. See *Flaksa v. Little River Marine Construction Co.,* 389 F.2d 885, 887–88 (5th Cir.1968). Again Mandalay misses the point by focusing on subjective behavior. Dismissal "with prejudice" is not necessarily to be viewed as a sanction. "Prejudice" as used with dismissals is a term of art indicating a dismissal is on the merits. And the general rule is involuntary dismissals are on the merits unless the court specifies they are "without prejudice." Rule 41(b); *Truvillion v. King's Daughters Hospital,* 614 F.2d 520, 524 (5th Cir.1980).

Whether or not a dismissal is on the merits is significant for res judicata purposes in later cases involving the same parties. See *Cannon v. Loyola University of Chicago,* 784 F.2d 777, 780 (7th Cir. 1986). However, the rendering court's discretion to control that effect is limited. Judgments on the merits are "based upon legal rights as opposed to mere matters of practice, procedure, jurisdiction, or form" (*Spiegel v. Continental Illinois National Bank,* 790 F.2d 638, 645 (7th Cir.1986) (quoting earlier cases)). Courts cannot in fact render such a judgment and then say "never mind" by dismissing "without prejudice."

■ If Judge Eisen's dismissal had been a sanction for Mandalay's misbehavior, he would have had the discretion to dismiss with or without prejudice (Rule 41(b); *Browning Debenture Holders' Committee v. DASA Corp.,* 605 F.2d 35, 39 (2d Cir.1978)). But here there was no sanction: Rather, there was a determination of Mandalay's "objective good faith"—that is, its eligibility for Chapter 11 protection. Such a determination is on the merits whether or not the bankruptcy court adds the words "with prejudice."

True enough, Section 349(a) says:

Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed.

That language has been interpreted to mean dismissals—even if "on the merits"—are without prejudice (2 *Collier on Bankruptcy* ¶ 349.02, at 349–5 to 349–6 (15th ed. 1986); see also S.Rep. No. 989, 95th Cong., 2d Sess. 48, *reprinted in* 1978 U.S.Code Cong. and Ad.News 5787, 5834). But of course Section 349(a) refers to debts "that were dischargeable" in the prior case. If a debtor is ineligible for Chapter 11 relief, its debts are not "dischargeable"—at least not under that Chapter.[14]

Thus if a Chapter 11 case is dismissed for reasons not relevant to the debtor's eligibility for the sort of relief reorganization provides, Section 349(a) says the debtor's debts are still dischargeable in a later Chapter 11 case (or in a case under another applicable Chapter). *In re Landis,* 29 B.R. at 238, on which Mandalay relies, says no more than that, albeit in a Chapter 13 context. Here the Order held Mandalay by the nature of its "business" ineligible for Chapter 11 relief. By its very nature, that determination of rights and legal relationships is "with prejudice."

Trustee Mem. 16–17 takes the position the Order's with-prejudice dismissal was "appropriate under the circumstances" but still may not be in the creditors' best interests. That is because Mandalay has apparently refiled in the Middle District of Florida and (in Trustee's view) has proposed a confirmable reorganization plan to the bankruptcy court there. Unless the Order's "with prejudice" language were stricken by this Court, Trustee fears the new Florida plan may run aground.

■ There are three problems with Trustee's suggestion:

1. As this opinion has just discussed, Judge Eisen's "with prejudice" language,

---

**14.** This Court is of course aware that if Mandalay's debts are not dischargeable under Chapter 11 they may not be dischargeable under the Code at all. See Section 727(a)(1) (only individ-

uals' debts dischargeable under Chapter 7). But the Code does not give all debtors an inalienable right to discharge: It only permits discharge of "dischargeable debts."

given the reason he dismissed the Petition, really adds nothing to the res judicata effect the Order would have in any event. In that respect the language may be surplusage, but it does not add an element to the Order that was not inherently there.

2. It is a cardinal res judicata rule that the rendering court does not determine the res judicata effect of its own judgments (*American National Bank & Trust Co. v. City of Chicago*, 636 F.Supp. 374, 381, 382 (N.D.Ill.1986)). Just as the Order could not broaden its own preclusive bar by adding the words "with prejudice," this Court cannot narrow it simply by striking those words. Arguments suggesting the Order does not bar Mandalay's current Florida filing are properly addressed to the Florida bankruptcy court, which *does* have the power to determine the Order's preclusive effect on its own proceedings.

3. Trustee's approach is in any case really inconsistent with her argument dismissal itself was proper. If Judge Eisen's "good faith" analysis—relying primarily on *Winshall*—was indeed correct, then for Trustee to argue in support of the current Florida filing really does amount to saying "never mind" the Order. On the record Mandalay made before Judge Eisen (and hence before this Court), Mandalay's eligibility for reorganization under Chapter 11 is no different in this District than in Florida. And on that record there is no basis for affirming—then nullifying—the Order.

### Short Notice

Section 1112(b) provides for dismissal of Chapter 11 cases "after notice and a hearing." Bankruptcy Rule 2002(a)(5) requires 20 days' notice of Chapter 11 dismissal hearings. Smith moved to dismiss at the December 10, 1985 hearing. Judge Eisen then gave Mandalay five days to respond (Dec. 10, 1985 Tr. 22). On December 17 Mandalay moved for (and was granted) additional time to respond (Dec. 17, 1985 Tr. 3). Mandalay filed its response later that day. On December 19 Judge Eisen issued the Order.

That chronology shows Mandalay received at least seven days' time in which to respond. And of course where disposition does not at all turn on resolution of factual issues, "hearing" in the usual procedural sense means the opportunity to respond, not necessarily the taking of live testimony. That was the case here.

 Nor was Judge Eisen obliged to give the full 20–days' notice. Bankruptcy Rule 9006(c)(1) says:

Except as provided in paragraph (2) of this subdivision, when an act is required or allowed to be done at or within a specified time by these rules or by a notice given thereunder or by order of court, the court for cause shown may in its discretion with or without motion or notice order the period shortened.

Bankruptcy Rule 9006(c)(2) does not exempt Bankruptcy Rule 2002(a)(5) from that provision. It was within Judge Eisen's discretion to follow a short schedule, and in the circumstances it was not an abuse to do so. He had all the information he needed to dispose of the motion, and—especially given the long litigation history preceding this bankruptcy filing—prompt disposition was not out of line.

 Further, though total denial of *any* right to be heard is "never harmless error" (*Boomgarden*, 780 F.2d at 661), Mandalay *was* heard. Though its memorandum bristles with claims of procedural error, Mandalay has nowhere suggested what it would have done or said, given more time, that could have avoided the Order's result. Bankruptcy Rule 9005 makes Rule 61's harmless-error principles applicable in bankruptcy cases. Absent any showing as to the negative impact of Judge Eisen's shortened timetable, any claimed error must be deemed harmless, and Judge Eisen's action was thus not an abuse of discretion.

### Borja's Appearance

 Mandalay raises numerous objections to Borja's appearance on Smith's be-

half. Borja is not admitted to practice in this District. In the Order Judge Eisen held he had properly granted Borja permission to appear pro hac vice. This District Court's General Rule ("General Rule") 3.12 permits that.[15]

Borja did not file an appearance form, however. General Rule 3.14(b) required him to do so. But the penalty for that omission is a contempt citation and a fine (see General Rule 3.14(e)), not the compulsory denial of his motion. Indeed, *D.H. Overmyer Co. v. Robson*, 750 F.2d 31, 34 (6th Cir.1984),[16] on which Mandalay relies, emphasizes the bankruptcy court's *discretion* to grant or deny an attorney the right to appear pro hac vice. Mandalay's insistence on interpreting discretionary rules as though they were straitjackets does not help its cause, especially as it once again fails to say how its position would have been improved had 13 more days been allowed it.

Mandalay does say Borja's failure to file an appearance form or the verified statements required by Bankruptcy Rule 2019 has prevented it from determining just whom Borja represents and whether or not that representation poses any conflicts of interest. Mandalay knows very well who Borja is, as he has appeared regularly during the long course of Mandalay's bankruptcy proceedings (see, e.g., *Mandalay III*, 22 B.R. at 203). And while that is not strictly of record in this appeal (though this Court may surely take note of the published case law reports), it does Mandalay no

credit to suggest it has suddenly been dealt a wild card.

In his dismissal motion Borja claimed to represent not only Smith but also "a class of tenants who previously deposited funds with the Debtor...."[17] He therefore should have filed a verified statement conforming to Bankruptcy Rule 2019(a). But his failure to do so is of no consequence to this appeal. As Trustee Mem. 14 (emphasis there, not in the Order) points out, Order at 1 refers to "the motion of Walter N. Smith, *a* creditor herein," not to any group or committee of creditors. Representatives of single creditors need not file statements under the terms of Bankruptcy Rule 2019. And that is how Judge Eisen treated Borja. Thus he exercised his allowable discretion under Bankruptcy Rule 2019(b)(1) to determine Borja's appearance was not "a failure to comply with the provisions of subdivision (a) of this rule...."

Mandalay's claim Borja had no "standing" to present the dismissal motion is far off the mark. Section 1112(b) provides for dismissal motions "on request of a party in interest." That provision was designed and inserted into the Code to prevent the bankruptcy court from acting sua sponte (*Gusam Restaurant Corp. v. Speciner (In re Gusam Restaurant Corp.*), 737 F.2d 274, 277 (2d Cir.1984)). Mandalay Mem. 17 does not contest the facts that (1) Smith is a creditor and (2) Borja represents Smith. Borja (as Smith's attorney) is not a *party* at all. But Smith (as a creditor) is a para-

---

**15.** General Rule 3.13(a) does obligate an out-of-district lawyer to designate a local counsel to receive service of papers. However:

 1. That requirement involves no substantive limitation on the out-of-district lawyer's participation in the lawsuit here (it simply provides a convenience for opposing counsel and the court).

 2. General Rule 3.13(b) specifically does not invalidate the out-of-district lawyer's participation before such designation is made, unless the lawyer fails to act within 30 days after notification by the Clerk of Court.

**16.** That is the proper caption and court for the case cited incorrectly in Mandalay Mem. 17.

**17.** Borja did not clearly purport to represent a creditors' committee called "Equity Security Holders" (whose existence Mandalay Mem. 17 says it doubts). Smith's motion was presented by "WALTER N. SMITH et al, a member of a group of tenants called Equity Security Holders...." But Borja signed the motion:

 WILLIAM A. BORJA, ESQUIRE
 Attorney for WALTER N. SMITH
 Equity Security Holders[.]

It is at least ambiguous whether Borja drafted the motion to give the impression he represented "Equity Security Holders," a term perhaps suggesting it is a creditors' committee. But as the text explains, that ambiguity has no significance here.

digmatic party in interest. Nothing hangs on the fact Smith is just one Mandalay member who wants his money back. Section 1112(b) requires only "*a* party in interest," not a majority of them.

None of Mandalay's other grounds for reversal has any merit. In particular, those addressed to venue are makeweight. Mandalay has consistently urged venue lies in this District, and there is at least colorable support for that assertion, because Mandalay's assets are allegedly present in Chicago (see 28 U.S.C. § 1408(1)). Smith contested venue here, but his motion to dismiss on substantive grounds amounts to a permissible waiver of that objection (even had the objection been well-taken).[18] Having itself asserted venue in this District, and having seen Smith's objection (whether or not it was sound) evaporate, Mandalay must be contented to lie in the bed it has made.

### Conclusion

Judge Eisen's Order is not clearly erroneous and is correct as a matter of law. None of the procedural defects alleged has merit. Accordingly the Order is affirmed.

---

18. Unlike lack of jurisdiction, of course, improper venue is a waivable defect.