**In re McCORMICK ROAD ASSOCIATES, an Illinois Partnership, d/b/a Super Gap Plaza, Debtor.**

**No. 90 C 2377.**

United States District Court,
N.D. Illinois, E.D.

April 23, 1991.

David A. Golin, Rosenthal & Schanfield, P.C., Chicago, Ill., for debtor.

Joel A. Schechter, Grossman, Mitzenmacher & Schechter, Chicago, Ill.

Michael S. Polk, Tarzana, Cal.

## ORDER

NORGLE, District Judge.

Before the court is an appeal by McCormick Road Associates ("McCormick") from an order of the Bankruptcy Court which dismissed its Chapter 11 bankruptcy petition. For the reasons discussed below, the Bankruptcy Court's decision is affirmed.

## FACTS

McCormick Road Associates ("McCormick") is an Illinois general partnership formed in January 1984. In July 1984, McCormick acquired a vacant parcel of land (the "Property") on which it later built a shopping center called Super Gap Plaza (the "Plaza"). Security Pacific Business Finance Corporation ("Security Pacific") financed this project by loaning McCormick $4,300,000. The loan was secured by a first mortgage on the Property which, in December 1986, had an appraised value of $5,750,000.

Although the Plaza was 80% occupied by early 1987, by autumn of that year, McCormick began experiencing cash flow problems and did not pay its September and October mortgage installments to Security Pacific. In October 1987, Security Pacific agreed to a three month moratorium on these two payments, provided that McCormick continue making current payments for the subsequent months.

By early 1988, according to McCormick, the Plaza was 100% occupied. Nevertheless, due to rent concessions, McCormick was still unable to cure its missed payments. McCormick requested another three month moratorium, and sought to modify the loan agreement. Security Pacific declined to modify the loan agreement, but gave McCormick an additional month to make up its missed payments. When McCormick failed to cure its missed mortgage payments, its loan went into default and Security Pacific instituted foreclosure proceedings in the Circuit Court of Cook County.

On September 27, 1988, one day before Security Pacific's hearing on appointment of a receiver, McCormick filed a voluntary

Chapter 11 petition with the Bankruptcy Court. However, because the appraised value of the Property exceeded the amount of its indebtedness, McCormick was advised by counsel that it would be unable to file a reorganization plan which could be confirmed under the "cram-down" provision of the Bankruptcy Code (11 U.S.C. § 1129(b)). Therefore, although McCormick attempted to sell or refinance the Property (for approximately $5,600,000), it never filed a reorganization plan with the Bankruptcy Court.

McCormick's efforts to sell or refinance the Property were unavailing, and on August 23, 1989—eleven months after McCormick filed its initial Chapter 11 petition—the Bankruptcy Court granted Security Pacific's motion to dismiss for failure to file a Plan of Reorganization. Security Pacific then proceeded with its foreclosure action and on November 29, 1989, obtained a judgment of foreclosure in the Circuit Court of Cook County in the amount of $5,149,-825.56. The Circuit Court set a Sheriff's Sale for March 7, 1990.

On January 9, 1990, less than five months after its initial Chapter 11 proceeding had been dismissed, McCormick—through newly retained counsel—filed a second Chapter 11 petition in the Bankruptcy Court. Together with its petition, McCormick filed a Plan of Reorganization and Summary of Debts and Property Schedules, which listed the value of the Property as "unknown." Thus, at the time it filed its second Chapter 11 petition, McCormick could not have known whether the value of the Property would exceed the sum of its debts. On January 11, 1990, Security Pacific filed a motion to dismiss McCormick's second Chapter 11 petition.

On February 28, 1990, the hearing date of Security Pacific's motion to dismiss, McCormick filed in open court and without notice to Security Pacific, an Amended Plan of Reorganization and a Disclosure Statement. The Amended Plan contemplated a $125,000 capital contribution to be divided between McCormick's three general partners. It also included McCormick's post-petition reappraisal of the Property, which

valued it at only $4,000,000. By contrast, Security Pacific's recent appraisal valued the Property at $5,200,000.

On March 7, 1990, the Bankruptcy Court granted Security Pacific's motion and dismissed McCormick's bankruptcy action pursuant to 11 U.S.C. § 1112(b), finding that McCormick had not filed its Chapter 11 petition in good faith. In so finding, the Bankruptcy Court cited *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir.1988), and held that each of the six indicia of bad faith articulated by the Eleventh Circuit in that case were also present in the McCormick bankruptcy. In addition, the court found: that McCormick provided insufficient evidence to show that its three partners had the financial ability to make the $125,000 capital contribution contemplated in the Amended Plan; that Security Pacific's appraiser was more credible and realistic than McCormick's appraiser; and that McCormick did not have an objectively reasonable likelihood of reorganization. The court also found that McCormick had not experienced a sufficient change in circumstances to warrant the filing of a second Chapter 11 petition less than five months after its initial Chapter 11 petition was dismissed. Finally, the Bankruptcy Court found that McCormick's sole reason for filing its second Chapter 11 proceeding was to prevent Security Pacific from executing its foreclosure judgment and selling the Property.

## DISCUSSION

Although not expressly stated in the Bankruptcy Code, it is well established that "good faith is a threshold prerequisite to securing Chapter 11 relief, and that the lack of such good faith constitutes 'cause,' sufficient for dismissal under 11 U.S.C. § 1112(b)." *In re Madison Hotel Associates*, 749 F.2d 410, 426 (7th Cir.1984); *see In re Mandalay Shores Cooperative Housing Ass'n*, 63 B.R. 842, 847 (N.D.Ill.1986) (noting that the list of "for cause" grounds for dismissal under § 1112(b) is nonexhaustive). "Good faith" for the purposes of Chapter 11 has not been uniformly defined; however, in this jurisdiction, as

analysis of "good faith" under § 1112(b) is "primarily concerned with the underlying question of whether reorganization is the proper course of action in a particular debtor's case." *Mandalay Shores*, 63 B.R. at 848. Thus, "good faith" must be determined on a case-by-case basis, and must take into account the totality of circumstances in which the debtor's bankruptcy petition was filed. *Cf. Madison Hotel*, 749 F.2d at 425 (discussing good faith necessary for confirming a plan—rather than filing a petition). The bankruptcy judge is in the best position to assess the good faith of the parties to the action. *Id.*

Although there is no *per se* test for determining when a debtor's Chapter 11 petition has not been filed in good faith, a number of cases have articulated lists of factors which provide a relevant guide in identifying such "bad faith" filings. One such case is *In re Phoenix Piccadilly Ltd.*, 849 F.2d 1393 (11th Cir.1988). In *Phoenix Piccadilly*, the Eleventh Circuit stated that:

> there is no particular test for determining whether a debtor had filed a petition in bad faith. Instead, the courts may consider any factors which evidence "an intent to abuse the judicial process and the purposes of the reorganization provisions" or, in particular, factors which evidence that the petition was filed "to delay or frustrate the legitimate efforts of secured creditors to enforce their rights."

849 F.2d at 1394 (quoting *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir.1984)). The *Piccadilly* court lists six "circumstantial factors which have been identified by the courts as evidencing a bad faith filing," *Id.* at 1394, and found that each of these six factors was present in Phoenix Piccadilly's bankruptcy:

(i) The Debtor has only one asset, that Property, in which it does not hold legal title;

(ii) The Debtor has few unsecured creditors whose claims are small in relation to the claims of the Secured Creditors;

(iii) The Debtor has few employees;

(iv) The Property is the subject of a foreclosure action as a result of arrearages on the debt;

(v) The Debtor's financial problems involve essentially a dispute between the Debtor and the Secured Creditors which can be resolved in the pending State Court Action; and

(vi) The timing of the Debtor's filing evidences an intent to delay or frustrated the legitimate efforts of the Debtor's secured creditors to enforce their rights.

*Id.* at 1394–1305.

The Bankruptcy Court below cites *Phoenix Piccadilly* and applies the six factors articulated in that case in its analysis. *See* March 7, 1990 Findings of Fact, Conclusions of Law and Order Granting the Motion to Dismiss ("Order"), pp. 8–11. McCormick appeals from the Order on three grounds: first, that the Bankruptcy Court applied an erroneous legal standard in determining that McCormick had not filed its Chapter 11 petition in good faith; second, that the Bankruptcy Court erred in finding that McCormick does not have a reasonable likelihood of reorganization; and third, that the court erred in finding that McCormick filed its Chapter 11 petition in subjective bad faith.

McCormick's first issue on appeal is divided into two parts. First, McCormick argues that the court erroneously applied this the *"Piccadilly* factors" as *per se* test for a prima facie showing of bad faith. *See* Brief of Appellant McCormick Road Associates ("McCormick Brief"), pp. 7–8. Second, McCormick argues that the court applied an erroneous standard in determining the evidence required to rebut this prima facie showing. *See* McCormick Brief, p. 7. Both of these arguments challenge the Bankruptcy Court's conclusions of law and both are therefore reviewed by this court *de novo*. *In re Bonnett*, 895 F.2d 1155, 1157 (7th Cir.1989).

*Prima Facie Showing of Bad Faith*

This court finds no merit in McCormick's position that the Bankruptcy Court

misapplied *Phoenix Piccadilly* as a *per se* prima facie test for bad faith. On the contrary, the Bankruptcy Court recognized that "[i]n deciding whether a Chapter 11 case is filed in bad faith, the court must carefully consider and weigh the particular facts and circumstances of each case [citations omitted]" and that " '[i]t is a conglomerate of factors or the collective impact of facts and circumstances, not a single feature in a particular case which will determine the good faith issue' [citation omitted]." Order, Conclusion of Law ¶ 5, p. 10. The Bankruptcy Court appears to have applied *Phoenix Piccadilly* correctly—i.e., as a relevant guide in evaluating what types of factors give rise to a determination that a bankruptcy petition was filed in bad faith.[1]

■ McCormick also argues that the "circumstantial factors" listed in *Phoenix Piccadilly*, when viewed individually, do not constitute bad faith.[2] However, McCormick's effort to trivialize these factors by viewing them in isolation is disingenuous in light of the Bankruptcy Court's finding that all six *Piccadilly* factors existed concurrently in the McCormick bankruptcy. The court correctly found that the "collective impact" of these concurrent factors had greater weight than the sum of the factors viewed individually. *See* Order, Conclusion of Law ¶ 5, p. 10.

■ Further, the Bankruptcy Court cited additional factors above and beyond those articulated in *Phoenix Piccadilly* which indicate a lack of good faith. Notably, the court pointed out that McCormick's second Chapter 11 petition constituted a serial filing which was not justified by a change in circumstances. Order, Conclusion of Law ¶ 11, pp. 12–13. This finding is supported by the fact that in the five months between the dismissal of its first Chapter 11 petition and the filing of its second petition, McCormick had not experienced any change in financial circumstances and had not yet reappraised the Property. In short, the record clearly reflects that the second petition was not based on any new "facts."

■ McCormick argues that its second bankruptcy filing was indeed justified by a change in circumstances; namely, "the filing by Debtor of a plan of reorganization." McCormick Brief, pp. 11–15. It is apparent, however, that this "change in circumstances" amounts to nothing more than a change in the debtor's strategy, and not a change in the underlying factual circumstances. McCormick's strategy, apparently, was to hire new counsel, file another bankruptcy petition in time to forestall the sale of the Property, and then find an appraiser who would prepare a value estimate low enough to suit its purposes.[3] That McCormick devised a stratagem for taking another bite at the bankruptcy apple does not constitute a "change in circumstances" which would justify the serial filing of a Chapter 11 petition. Although McCormick's serial filing may not constitute bad faith *per se* or provide an independent ground for dismissal under 11 U.S.C. § 109(g),[4] it is nevertheless an appropriate "factor" to consider in conjunction with other circumstantial factors which are probative of bad faith. McCormick also argues that a clear and convincing showing of malice or intentional abuse of the bank-

---

**1.** Numerous recent cases have cited *Phoenix Piccadilly* and applied it in much the same manner as did the Bankruptcy Court below. *See, e.g., In re Campus Housing Developers, Inc.,* 124 B.R. 867 (Bankr.N.D.Fla.1991); *In re Plummer,* 115 B.R. 371 (Bankr.M.D.Fla.1990).

**2.** "No court has dismissed a petition for bad faith *solely* because the debtor owns only one asset" [emphasis added], McCormick Brief, p. 10; " '[t]he absence of scheduled unsecured creditors *by itself* does not indicate bad faith *per se* [citation omitted]' " [emphasis added], McCormick Brief, p. 11; " '[f]iling a petition on the eve of foreclosure, or to stop a foreclosure

in progress, is not, *standing alone,* bad-faith conduct [citation omitted]' " [emphasis added], McCormick Brief, p. 11.

**3.** It was not until February 12, 1990—over a month after McCormick filed its second bankruptcy petition—that McCormick's new appraiser valued the Property at $4,000,000. The Bankruptcy Court did not find this appraisal to be credible. Order, Finding of Fact ¶ 32, p. 8.

**4.** *See In re McKissie,* 103 B.R. 189, 191 (Bankr. N.D.Ill.1989) (filing of a second case or a serial case is not *per se* bad faith); *In re Olson,* 102 B.R. 147, 149–50 (Bankr.C.D.Ill.1989).

ruptcy laws is necessary to establish a prima facie case of § 1112(b) bad faith. McCormick Brief, p. 18. However, once a court has properly found that the debtor has failed to satisfy the court's objective good faith inquiry—i.e., "whether reorganization is the proper course of action in a particular debtor's case" [5]—it may properly dismiss the debtor's petition without considering the debtor's subjective good faith. *In re Klein,* 100 B.R. 1004, 1006–7 (N.D.Ill. 1989); *Mandalay Shores,* 63 B.R. at 848–9. In other words, a finding of subjective bad faith—i.e., intentional abuse of the bankruptcy laws—is not a necessary prerequisite to dismissal for bad faith filing. *See In re Grieshop,* 63 B.R. 657 (N.D.Ind.1986). In *Grieshop,* the district court reversed a bankruptcy court order denying the creditor's motion to dismiss the debtor's Chapter 11 petition, holding that the bankruptcy court applied an excessively narrow standard of bad faith. The court noted that a showing of bad faith sufficient to warrant dismissal of a Chapter 11 petition does not require evidence of malicious intent, stating:

> Defining good faith in the bankruptcy context or elsewhere has never been an easy task. It may not be summarily equated with malfeasance and abuse. A debtor may simply be motivated by a desire to use any means at hand to preserve assets that are in jeopardy. Such acts of desperation do not necessarily imply active malfeasance directed at a given creditor. They may, however, illustrate a misuse, as opposed to abuse, of bankruptcy procedure to the extent that the legitimate ends of bankruptcy law are frustrated by the debtor's actions.

*Grieshop,* 63 B.R. at 663. Similarly, in *Mandalay Shores,* Judge Shadur, of this district, held that:

> [11 U.S.C.] Section 1112(b) and its associated "good faith" doctrine are primarily concerned with the underlying question whether reorganization is the proper course of action in a particular debtor's case. On that score dismissal of a Chap-

ter 11 petition—like dismissal of any lawsuit—is not imposed principally as a sanction for bad intentions or obstreperous behavior. Instead, dismissal flows from the legal determination the debtor is not entitled to the remedy it seeks. *Mandalay Shores,* 63 B.R. at 848.

Courts in this district have recognized a distinction between the "bad faith" showing necessary to warrant dismissal of a Chapter 11 petition and the active malfeasance or abuse of the bankruptcy laws which might rise to the level of sanctionable conduct. *See In re Park Place Assoc.,* 118 B.R. 613 (Bankr.N.D.Ill.1990). In *Park Place,* the bankruptcy court pointed out that unlike a motion for sanctions under the Bankruptcy Code (Rule 9011), which requires a showing of subjective bad faith, a motion to dismiss a bankruptcy action for "bad faith" is held to an objective standard. The court stated:

> As the court in *California Sound Systems* [69 B.R. 893, 901 (Bankr.S.D.Cal. 1987)] observed, "the appellation 'bad faith filing' is perhaps a misnomer in that it implies the existence of ill will or malicious conduct on the part of debtor prior to filing for relief." 69 B.R. at 901 n. 2. In the Northern District of Illinois the determination of whether a bankruptcy petition is filed in good faith is made by an analysis of objective standards geared toward evaluating "whether reorganization is the proper course of action in a particular debtor's case." *In re Mandalay Shores Cooperative Housing Assoc., Inc.,* 63 B.R. 842, 848 (N.D. Ill.1986). A dismissal under this criterion is by no means synonymous with a finding that a case was filed with intent to harass a creditor.

*Park Place,* 118 B.R. at 618. *But cf. McKissie,* 103 B.R. at 194 (a showing of subjective bad faith is no longer necessary even for obtaining sanctions under Bankruptcy Rule 9011).

McCormick has failed to provide any persuasive argument in support of its position that the Bankruptcy Court applied an erroneous prima facie test for bad faith filing.

5. *Mandalay Shores,* 63 B.R. at 848.

Consequently, the court affirms this portion of the Bankruptcy Court's order.

### Rebuttal of Prima Facie Showing of Bad Faith

■ Next, McCormick argues that the Bankruptcy Court erred in holding that it failed to rebut Security Pacific's prima facie showing of bad faith. This argument consists of two strands. First, McCormick asserts that the Bankruptcy Court erroneously required it to rebut the prima facie showing by establishing that it had a "reasonable likelihood of reorganization" rather than "any possibility of reorganization." McCormick Brief, p. 19. Second, McCormick argues that the Bankruptcy Court erred in holding it to a "clear and convincing" standard in its efforts to rebut Security Pacific's prima facie showing of bad faith. This court is not persuaded by either of these arguments.

First, a test for rebutting a prima facie case of bad faith which requires only a showing of "any possibility of reorganization" is not workable. The term "possibility" is simply too broad insofar as it encompasses speculative, remote, and farfetched prospects which, though unrealistic, may literally be "possible." The application of this test would undermine the purpose of the good faith requirement, which is to prevent misuse of the bankruptcy laws and ensure that reorganization is the "proper course of action in a particular debtor's case." *Mandalay Shores*, 63 B.R. at 848. Rather, such a test would permit imaginative lawyers to misapply the bankruptcy remedies by contriving quixotic, albeit technically "possible," reorganization schemes to justify their improper filing.

■ On the other hand, the "reasonable likelihood of reorganization" test well serves the purpose of the good faith requirement. *See In re French Gardens, Ltd.*, 58 B.R. 959, 964 (Bankr.S.D.Tex.1986) ("Good faith requires that the debtor have a reasonable expectation of reorganization").[6] This test ensures that, when a prima facie showing of bad faith is made, a debtor may not continue to evade creditors and squander the court's time without establishing that its chances of reorganizing are at least reasonably likely.

■ McCormick's next argument—that the Bankruptcy Court erred in requiring it to rebut the prima facie case of bad faith with "clear and convincing evidence"—is likewise unsupported by persuasive authority or reasoning. McCormick cites no case law in support of its position that the "clear and convincing" standard applied by the Bankruptcy Court was improper; nor does it attempt to support this position with policy rationale. Indeed, after raising the point, McCormick never directly addresses the "clear and convincing" issue at all.[7] McCormick's failure to address why the Bankruptcy Court's application of a "clear and convincing" standard was erroneous forfeits the point. *See United States v. Giovannetti*, 919 F.2d 1223, 1230

---

6. In its brief, McCormick acknowledges this language in the *French Gardens* case, but argues that a "reasonable expectation" of reorganization is different from a "reasonable likelihood" in that the former refers exclusively to the subjective belief of the debtor. McCormick Brief, p. 27. As discussed above, however, the applicable rule in this jurisdiction applies an objective rather than a subjective test of good faith. *See also In re McDermott*, 78 B.R. 646, 651 (Bankr. N.D.N.Y.1985) ("Good faith requires an intent to reorganize accompanied by a *reasonable possibility* of success; honesty and good intentions are not enough" [emphasis added] ); *In re Markunes*, 78 B.R. 875, 880 (Bankr.S.D.Ohio 1987) (a good faith filing requires honest intention "as well as the need *and realistic ability* to effectuate a reorganization" [emphasis added] ).

7. McCormick does, however, argue that it is unfair for the court to force the debtor to establish a likelihood of reorganization at such an early point in the proceedings. McCormick Brief, p. 31. The court rejects this argument for the reasons stated above. McCormick also criticizes what it perceives as the court's reliance on *In re Eighty South Lake*, 63 B.R. 501, 508–509 (Bankr.C.D.Cal.1986), aff'd 81 B.R. 580 (9th Cir. B.A.P.1987). This case, however, is merely cited for the proposition that once a prima facie showing of bad faith has been made, the burden shifts to the debtor to establish a legitimate purpose for having filed the petition; namely, an ability to reorganize. McCormick's efforts to distinguish *Eighty South* simply do not support its position that the debtor may rebut prima facie showing of bad faith with something less than "clear and convincing" evidence.

(7th Cir.1990) ("A litigant who fails to press a point by supporting it with *pertinent* authority or by showing why it is a good point despite a lack of authority … forfeits the point. [Citations omitted.] We will not do his research for him" [emphasis in original]).

### Challenged Findings of Fact

■ McCormick's last two points challenge the Bankruptcy Court's findings of fact and are reviewed under a clearly erroneous standard. Bankr.Rule 8013, 11 U.S.C.; *Bonnett*, 895 F.2d at 1157. McCormick first argues that the Bankruptcy Court erred in finding that it had did not have the ability to reorganize. The crux of McCormick's argument here is that after finding the testimony of Security Pacific's appraiser to be more credible and realistic than that of McCormick's appraiser, the Bankruptcy Court erred in accepting the former's valuation of the Property while accepting the latter's projections of net operating income. "If Security Pacific's appraiser's estimate of value is accepted then Security Pacific's appraiser's projections of net operating income must be used to determine if a plan is feasible." McCormick Brief, p. 33.

However, the Bankruptcy Court's finding that McCormick could not propose a confirmable plan did not hinge upon any finding of projected operating income. On the contrary, this finding appears to hinge exclusively upon the Property value accepted by the court. The court stated: "In fact, the success of McCormick's Amended Plan rests on the valuation of the Property. If Security [Pacific] is fully secured, McCormick will not be able to propose a confirmable plan." Order, Conclusion of Law ¶ 12, p. 13. Thus, the Bankruptcy Court's holding is supportable regardless of which appraiser's projected operating income figures it accepted.

■ Finally, McCormick challenges the Bankruptcy Court's finding that it filed its Chapter 11 petition merely to forestall the rights of Security Pacific. Specifically, McCormick argues that the court misconstrued the testimony of Harvey Server, one of McCormick's three general partners. The court found that "Harvey Server testified that the sole reason McCormick filed for relief was to stop the foreclosure sale." Order, Finding of Fact ¶ 33, p. 8. McCormick asserts that Mr. Server did not testify that blocking the foreclosure sale of the Property, was McCormick's *sole* reason for filing.

McCormick's challenge to the Bankruptcy Court's factual finding regarding its motives are irrelevant in light of this court's finding that subjective intent is not an indispensable component of a § 1112(b) bad faith analysis. Nevertheless, this court finds that the Bankruptcy Court had ample grounds for finding subjective bad faith—even without a direct admission by one of McCormick's partners. Given all of the circumstantial indicia of bad faith here (the *Piccadilly* factors, the serial filing, etc.), combined with the Bankruptcy Court's wide discretion in evaluating the credibility of witness testimony and other evidence before it, the court had ample basis for determining that McCormick demonstrated subjective bad faith in filing this Chapter 11 petition.

### CONCLUSION

For the reasons discussed above, McCormick has failed to establish that the Bankruptcy Court's conclusions of law were incorrect, or that its findings of fact were clearly erroneous. The Bankruptcy Court's decision is affirmed in all respects.

IT IS SO ORDERED.