In re Caryl W. RIGGSBY, Debtor.

SUBURBAN BANK OF CARY–GROVE, Plaintiff-Appellant,

v.

Caryl W. RIGGSBY, Defendant-Appellee.

Nos. 83 B 6251, 83 A 2414 and 86 C 1324.

United States District Court, N.D. Illinois, E.D.

Sept. 16, 1986.

Robert Keith Larson, Riordan, Larson, Bruckert & Moore, Chicago, Ill., for plaintiff.

Richard W. Hillsberg, Tischler & Wald, Chicago, Ill., for defendant.

## MEMORANDUM OPINION
## AND ORDER

McGARR, District Judge.

This is an appeal pursuant to Rule 8001 of the Federal Bankruptcy Rules challenging an order entered by Judge John D. Schwartz on January 6, 1986, in the adversary proceeding entitled *Suburban Bank of Cary-Grove v. Caryl W. Riggsby*, No. 83 A 2414. That order reaffirmed a prior order in the same case entered by Judge Lawrence J. Fisher and granted debtor Caryl W. Riggsby's ("Riggsby") motion to dismiss the adversary complaint of the Suburban Bank of Cary-Grove ("Bank"). For the following reasons, the court affirms the order of the bankruptcy court.

This appeal presents a rather lengthy and detailed factual and procedural history. Debtor Riggsby filed a voluntary petition in bankruptcy, case number 83 B 6251, on May 18, 1983. The first meeting of creditors was scheduled and held on June 10, 1983, pursuant to order of the bankruptcy court dated May 26, 1983. The May 26 order also set July 15, 1983 as the bar date for the filing of complaints objecting to discharge of debt.

Appellant Bank was represented by counsel at the June 10 meeting due to Riggsby's indebtedness to the Bank in the amount of approximately $130,000. The Bank was concerned with Riggsby's transfer, to his wife, of a 200–acre farm and a four-unit townhouse, properties which Riggsby had listed in his financial statement given the Bank in connection with a loan. The trustee apparently told the bank that he would continue the date for filing objections to discharge to some time in August, 1983. The Bank's attorney was apparently later told by the trustee that the new bar date would be August 19, 1983, but was not told that the continuance had not as yet been approved by the court.

On June 24, 1983, the trustee petitioned the court for authority to employ an attorney to investigate the possible fraudulent transfers which Riggsby had made to his

wife. That petition was granted by the court on the same date.

On August 17, 1983, 33 days after the bar date established by the court and two days before the date allegedly announced by the trustee, the Bank filed its adversary complaint alleging that Riggsby induced the Bank to loan him approximately $130,-000 by the use of a materially false and fraudulently written financial statement. On September 13, 1983, Riggsby filed a motion to dismiss the Bank's complaint on the ground that it was not timely filed. Riggsby's motion was granted on September 16, 1983 by Chief Bankruptcy Judge Lawrence J. Fisher. On September 23, 1983, Judge Fisher denied the Bank's motion to reconsider.

Paramount to the parties' arguments concerning the motions to dismiss and reconsider was the fact that, on August 1, 1983, new Federal Bankruptcy Rules went into effect. Under the old rules, the bankruptcy court could forgive a late filing upon motion made after the expiration of the bar date where the failure to act was the result of excusable neglect. *See* Bankruptcy Rule 906(b) (superseded). In the instant case, the Bank filed its complaint and subsequently moved for leave to extend the date, after the expiration of the date. Under the new rules, a party seeking an extension of time in which to file an adversary complaint must move before the original time has expired. Bankruptcy Rule 4007(c).

Judge Fisher noted the confusion surrounding the implementation of the new rules where a case was pending under the old rules. Judge Fisher found, however, that even under the old rules, the Bank should not be allowed leave to file its untimely complaint since the circumstances attributed to the late filing did not constitute excusable neglect. The court found that no attorney experienced in bankruptcy proceedings should believe that the trustee has the power to extend a bar date, and that mere reliance on the trustee's statement to that effect is thus not an appropriate ground on which to grant an extension.

The Bank appealed Judge Fisher's rulings of September 16 and 23 to the United States District Court for the Northern District of Illinois, Eastern Division. That appeal, number 83 C 8028, was heard by Judge Bernard Decker. Judge Decker, like Judge Fisher, noted that the confusion with respect to the bankruptcy court's power to extend was due to the implementation of the new rules during the pendency of the case. Judge Decker set out the old and new rules, and agreed that the new rule bars the court from forgiving a late filing where the motion to extend time is not made within 60 days of the first creditors' meeting. Applied to the instant facts, the new rule would thus absolutely bar the Bank's complaint.

Addressing the issue of which rule should be applied to the instant case, Judge Decker cited an order of the Supreme Court of the United States. That order provides that the new rule should apply unless "in the opinion of the court [its] application in a pending proceeding would not be feasible or would work injustice, in which event the former procedure applies." 52 U.S.L.W. 4461 (1983). Judge Decker noted that, although the bankruptcy court recognized its power to apply the old rule, it made no explicit finding with respect to the injustice of applying the new rule. The bankruptcy court did appear to apply the old rule, however, when it found that the Bank's late filing was not due to excusable neglect.

Judge Decker concluded that the case should be remanded for several reasons. First, the bankruptcy court should have made an explicit finding concerning the possible injustice of applying the new rules. Judge Decker did note, and this court agrees, that no injustice would inure to the Bank from application of the new rules if the same result would occur under the old rules. Second, and more important, however, was the bankruptcy court's misapplication of the old rules. Judge Decker found that by requiring the Bank to show excusable neglect in order to gain an extension, the court had applied too stringent a

standard. Rather, because the Bank had filed its complaint within the 90–day outside limit established by the old rules, the bankruptcy court, in its discretion, could have extended the bar date upon a finding that Riggsby would not be prejudiced by the late filing. *See In re Jones*, 560 F.2d 775, 778 (7th Cir.1977). The bankruptcy court failed to make any finding concerning prejudice. The case was thus remanded, with instructions that the bankruptcy court should determine first whether Riggsby was prejudiced by the Bank's late filing and, second, whether, in light of this finding, the application of the new rules rather than the more flexible old ones would be unjust to the Bank.

Pursuant to the remand ordered by Judge Decker, an evidentiary hearing was held before Bankruptcy Judge John D. Schwartz on December 9, 1985. Pursuant to that hearing, Judge Schwartz made 17 findings of fact, the most salient of which are summarized as follows:

1. Riggsby was in his mid–50's when the Bank filed its complaint.

2. Riggsby and his wife, married for approximately 30 years, would make their economic, living and traveling plans jointly, rather than individually.

3. Prior to the July 15, 1983 bar date, Riggsby was employed as a commissioned salesman for a company established by his wife and son.

4. Riggsby was so employed until August 1, 1983.

5. Between July 18 and July 30, 1983, Riggsby and his wife traveled to Florida to investigate the potential for Riggsby's entering into an auto salvage business with his wife's brother-in-law, Kenneth Shaw.

6. Riggsby and Shaw traveled to at least one auto auction while in Florida. At the same time, Riggsby's wife looked for an apartment, paid $10.00 for a credit check, and received approval by an apartment development firm.

7. Riggsby and his wife returned to Illinois on July 30, 1983 with intent to move to Florida.

8. Riggsby's wife sold her interest in her business to her son for $25,000 and Riggsby voluntarily gave up his job. Riggsby and his wife intended to start clear with no outstanding problems in Florida.

9. Shaw did not learn of Riggsby's bankruptcy until September, 1983.

10. In mid-August, Riggsby returned to Florida to begin learning more about the auto salvage business. Riggsby intended to move to Florida by September 1, 1983.

11. Riggsby gave up the opportunity to start a business in Florida by reason of the filing of the Bank's complaint. As a result of the late complaint, Riggsby and his wife, now each without jobs or an interest in an Illinois business, determined that they could not move to Florida, even though they had known of a previously timely filed complaint to the dischargeability of a debt.

12. Riggsby could have returned to his old job with his son.

13. Riggsby felt he could not get a fresh start in Florida with two outstanding adversary complaints in Illinois, totalling approximately $213,000, as it would cost too much to begin a business in Florida while defending lawsuits in Illinois.

14. The properly filed complaint resulted in a judgment against Riggsby of $17,-000.

15. The Bank's late filing of its adversary complaint prejudiced Riggsby in that he changed his position by quitting his job after the bar date with the expectation that he would obtain a fresh start in Florida. After finding out that the Bank had filed its complaint, he decided, with his wife, that he would have to remain in Illinois to assist his attorneys. Riggsby's wife sold her business interest subsequent to the bar date with the expectation of a fresh start in Florida.

16. Riggsby knew, on or about July 15, 1983, that one complaint had been filed against him and no motion had been made to extend the July 15, 1983 bar date.

Judge Schwartz noted that, because Riggsby demonstrated that he was prejudiced by the Bank's delay in filing its complaint, and in light of the fact that the Bank presented no contrary evidence, the Bank's tardiness could not be excused under the old rules. Judge Schwartz also found that the Bank could not establish excusable neglect. In conclusion, Judge Schwartz held that, because the Bank was not entitled to an extension under the old rules, the application of the new rules would not be unjust. Based on these findings and conclusions, the previous order which had granted Riggsby's motion to dismiss the Bank's complaint as untimely was reaffirmed by Judge Schwartz.

Appellant Bank now seeks review of Judge Schwartz's order. The Bank sets out several arguments which, it contends, warrant reversal. In this court's view, the proper starting point is the correctness of the finding of fact that Riggsby was prejudiced by the Bank's delay in filing its complaint. It is precisely this determination upon which the bankruptcy court's refusal to extend time for the Bank to file its complaint, and upon which most of the Bank's arguments on appeal, turn.

█ Bankruptcy Rule 8013, provides that, on appeal of a bankruptcy court's judgment or order, "[f]indings of fact shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." The "clearly erroneous" standard mandates that a reviewing court may not overturn a finding of fact unless it is left with a definite and firm conviction that the finding was a mistake. *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948). Furthermore, the existence of contrary but equally plausible inferences does not render findings of fact clearly erroneous. *William Tell II, Inc. v. State of Illinois Liquor Control Commission*, 38 B.R. 327, 331 (N.D.Ill.1983).

█ The Bank maintains that, despite this stringent standard, the bankruptcy court's finding of prejudice should be over-turned. The Bank contends that the finding of prejudice to Riggsby is not supported by any evidence in the record. The Bank points to the testimony in the record which indicates that Riggsby voluntarily quit his job and could easily have either resumed working for his son's company or followed through on his plans to start a business in Florida. The Bank asserts that Riggsby never committed to or acquired any property interest in reliance on the July 15 bar date which could be lost or impaired by the late complaint. The Bank asserts that it was error to consider Riggsby's wife's testimony concerning her sale of a business interest because Riggsby, not his wife, was the debtor. The Bank concludes that the testimony reveals a classic shell game pattern among Riggsby's family and that, at the most, Riggsby was disappointed, but not prejudiced, by the late filing of the complaint.

The court disagrees with the Bank's contention that the finding of prejudice is not supported by any evidence in the record. The bankruptcy court heard testimony from Riggsby, his wife, and Kenneth Shaw, his prospective business partner from Florida. After hearing the testimony and judging the credibility of those testifying, the court made 17 fact findings. Among those was that Riggsby and his wife made their economic, living and traveling plans together. Pursuant to this finding, the court took into account the testimony and acts of Riggsby's wife, including her sale of her business interest. Although the Bank is correct in its assertion that Riggsby's acts were voluntary, and that he could still have moved to Florida and begun a business, the facts merely support an inference contrary to the finding of prejudice. That much is not enough. Viewing the record before it, the court is unwilling to hold that the bankruptcy court's finding of prejudice is clearly erroneous.

The court agrees with the finding of the bankruptcy court, made pursuant to Judge Decker's instructions for remand, that, in light of the prejudice to Riggsby, an extension should not be granted the Bank under

**334**

the old rules and, therefore, application of the new rules does not work an injustice.

As stated previously, Bankruptcy Rule 906(b) (superseded) allows the court to forgive, in its discretion, a late filing upon application made after the expiration of the specified period where the failure to act is the result of excusable neglect. By definition, the extension is discretionary. The Seventh Circuit has announced that the granting of such an extension is not an abuse of discretion where there exists no prejudice to the bankrupt as a result of the extension. *Jones*, 560 F.2d 778. Although the Bank asserts that its reliance on the Trustee's promise to obtain an extension constitutes excusable neglect or justifiable reliance, the court need not address this issue. Because the bankruptcy court has found, and this court has affirmed, that Riggsby was prejudiced by the Bank's late filing, it was clearly not an abuse of discretion for the bankruptcy court to refuse to grant an extension of time under the old rules.

Under the new bankruptcy rules, a party seeking an extension of time to file an adversary complaint objecting to discharge must either file the complaint or seek an extension of time within 60 days after the first creditors' meeting. The motion shall be made before the time has expired. Bankruptcy Rule 4007(c). In the instant case, the first creditors' meeting was held on June 10, 1983. The Bank neither filed its complaint nor moved for an extension of time in which to do so within 60 days from the meeting. A failure to file or make a motion for extension of time within the 60-day period bars the court from forgiving a late filing. *In re Neumann*, 36 B.R. 58 (D.Minn.1984).

 As stated previously, the new rules apply to this case unless the application of the new rules would not be feasible or would work injustice, in which case the former rules apply. 51 U.S.L.W. 4461 (1983). The court has already determined that the finding of prejudice to Riggsby made by the bankruptcy court was not clearly erroneous and so must survive appeal. Because Riggsby was prejudiced by the Bank's late filing, it was not an abuse of discretion for the bankruptcy court to refuse to grant an extension under the old rules. Since the bankruptcy court was within its power in refusing an extension under the old rules, application of the new rules, which also would bar the Bank's complaint, does not work injustice.

Finally, the Bank points to Bankruptcy Rule 1001, which states that the rules shall be construed to secure expeditious and just determination of every proceeding, and urges this court to allow determination of its complaint on the merits. To do so, however, would be to ignore the express provisions of the rules and the findings of the bankruptcy court. This court is unwilling and unable to so rule.

For the reasons stated, the order of the bankruptcy court entered on January 6, 1986, dismissing appellant Bank's complaint as untimely, is affirmed.