**In re Richard BRAUER, Debtor.**

**Nos. 87 C 3092, 87 C 3093.**

United States District Court,
N.D. Illinois, E.D.

Aug. 5, 1987.

core or non-core. The instant motion contained no such admission or denial.

**904**

Richard C. Brauer, Hazel Crest, Ill., pro se.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Richard Brauer ("Brauer") appeals under 28 U.S.C. § 158(a) from (1) Bankruptcy Judge Robert Ginsberg's November 19, 1986 Findings of Fact, Conclusions of Law and Order (the "November Order") dismissing Brauer's voluntary Chapter 11 petition (the "Petition")[1] and (2) Judge Ginsberg's February 10, 1987 Findings of Fact, Conclusions of Law and Order (the "February Order") denying Brauer's motion to vacate certain findings in, and to reconsider, the November Order. For the reasons stated in this memorandum opinion and order, both Bankruptcy Judge Ginsberg's decisions are affirmed.

### Facts[2]

Brauer, an attorney, filed the Petition April 12, 1984. Pursuant to Bankruptcy Rule ("Rule") X–1007 the United States Trustee ("Trustee") required Brauer to file certain biweekly financial reports (the "Financial Reports").[3]

---

**1.** Chapter 11 of the 1978 codification of the bankruptcy provisions of Title 11 (the "Code") comprises 11 U.S.C. §§ 1101–1174. All further citations to the Code will follow Title 11's numbering and take the form "Section—."

**2.** These facts are drawn from Brauer's designated record on appeal, each portion of which (including transcripts of proceedings before

Judge Ginsberg) is a numbered document. Each reference to those documents will take the form "Doc.— at—" or, where a transcript of a court proceeding is involved, "Doc.— Tr.—."

**3.** Brauer claimed that because he had no employees, Trustee had not required him to file monthly reports containing only information as to a debtor's employees (Doc. 15 at 3). How-

On January 23, 1986 Trustee filed a motion to dismiss or convert Brauer's Petition under Section 1112(b) because Brauer had failed to provide any of the required Financial Reports. At the February 18, 1986 hearing on that motion, Judge Ginsberg ordered the Petition dismissed unless Brauer filed all the past-due Financial Reports by March 4. Then on March 14 Judge Ginsberg ruled orally that Brauer had "substantially complied" with the earlier order (Doc. 15 Tr. 3) and had "made a good faith effort to comply" (*id.* at 4). At the same time, Judge Ginsberg noted Brauer's filings were subject to review by the Trustee and Trustee could renew his motion if there were problems with those or future filings. Accordingly the motion was denied without prejudice (*id.*).

Apparently a slow learner, Brauer immediately took up where he had left off: After the March 14 hearing he resumed his pattern of total non-filing of his Financial Reports. On October 6 Trustee renewed the motion to dismiss or convert, and Judge Ginsberg set a hearing on that motion for November 4.

On November 4 Judge Ginsberg gave Brauer until November 19 to "straighten out" all his problems with the Trustee. That mandate plainly did *not* permit Brauer simply to file all the delinquent reports *on* November 19. Instead the filings had to be made far enough in advance of that date to enable Trustee to have reviewed them to make sure everything was in order—Judge Ginsberg's warnings were explicit, and Brauer clearly understood them (Doc. 16 Tr. 9–11):

> THE COURT: I am going to continue it for hearing in two weeks from today; if everything is not straightened out, and I mean straightened out, and it is your job to straighten it out, I want to make it clear it is not Mr. Ramey's job. It is your job.
>
> If it is not straightened out, I will conduct an evidentiary hearing. I will convert or dismiss the case with preju-

dice, which is a more serious temptation at this point.

> The fact is you have known since March there were problems. You have known since day one the reports were to be filed monthly and bi-monthly, and there is no acceptable excuse for your pattern of filing.
>
> I can't imagine it. It is simply a gross failure to comply with national and local rules, and it shows me a lack of seriousness about the Chapter 11 Case.
>
> If it is not completely straightened out in two weeks, that will be the end of the case; do you understand?
>
> MR. BRAUER: Yes. It will be straightened out.
>
> THE COURT: Set an evidentiary hearing in approximately two weeks on the U.S. Trustee's motion to convert.
>
> MR. BRAUER: It will be straightened out sooner.
>
> THE COURT: The date I will give you is an absolute deadline; the 19th. I will tell you if every report is not timely filed from here on out, the next U.S. Trustee's motion will be granted summarily.
>
> I want the record to be clear; he has been warned, and he understands the U.S. Trustee's motion.

When Brauer appeared before Judge Ginsberg November 19, he had *not* filed any of the required Financial Reports, including the one that had fallen due November 15. Though Brauer had belatedly brought with him to the hearing the entire eight months' worth of reports (running all the way from March 15 through November 15, 1986), even he admitted he had not complied with Judge Ginsberg's November 4 order (Doc. 17 Tr. 2–6). Judge Ginsberg found Brauer's persistent failure to comply with his orders and Trustee's filing requirements showed "a failure ... to prosecute his case in good faith" on Brauer's part and dismissed his Petition (Doc. 4).

On December 2 Brauer filed a motion (Doc. 5) to vacate the finding that he had not prosecuted his case in good faith and

---

ever, Brauer nowhere claimed any sort of exemption from Trustee for the required biweekly

reports as to cash receipts and disbursements, accrued income and expenses.

for reconsideration of the order of dismissal. On February 10, 1987 Judge Ginsberg held an evidentiary hearing on Brauer's motions and denied both motions in his February Order.[4] In part Judge Ginsberg found specifically (Doc. 19 Tr. 8):

> The fact that he [Brauer] has willfully failed to comply with the Rules on a consistent basis justifies this Court's finding which stands; that he has not prosecuted this case in good faith.... [T]here has been an absence of good faith on Mr. Brauer's part in his compliance with the Rules for proceeding as a debtor in possession under Chapter 11, and that is cause for and justifies the dismissal of a case.

### Questions Presented and Standards for Review

Brauer lists ten issues presented by his appeals and then rearranges those issues into five "arguments." In reality the issues distill down into three questions:

1. whether Judge Ginsberg gave Brauer an adequate opportunity to be heard on the question of his good faith;

2. whether Judge Ginsberg's findings of fact in his November and February Orders were wrong; and

3. whether Judge Ginsberg's dismissal of the Petition and his refusal to reconsider that dismissal were improper.

Matters are complicated at bit (though not seriously) by the different standards of review called for by the three questions. They may be stated briefly:

1. Whether Brauer had an adequate hearing is of course a question of law. That being so, the matter is one this Court can review de novo (*In re Boomgarden*, 780 F.2d 657, 660 (7th Cir.1985)).

2. Judge Ginsberg's findings of fact must be reviewed under a "clearly erroneous" standard (Rule 8013; *Boomgar-*

*den*, 780 F.2d at 660). Under that standard (*In re Riggsby*, 66 B.R. 329, 333 (N.D.Ill.1986)):

> [A] reviewing court may not overturn a finding of fact unless it is left with a definite and firm conviction that the finding was a mistake.

Even were this Court to become convinced (as it has not) that it would have decided a factual issue differently from Judge Ginsberg, it should not substitute its judgment for his (*Anderson v. Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985)).

3. As for Judge Ginsberg's decision to dismiss Brauer's petition and his refusal to reconsider that dismissal, Section 1112(b) leaves those decisions to his discretion (*In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir.1984)). This Court may reverse such a decision only for an abuse of that discretion (*In re Koerner*, 800 F.2d 1358, 1368 (5th Cir. 1986); see also *Roland v. Salem Contract Carriers, Inc.*, 811 F.2d 1175, 1178 (7th Cir.1987)).

### Opportunity To Be Heard

■ Section 1112(b) required Judge Ginsberg to give Brauer "notice and a hearing" before deciding Trustee's motion to dismiss or convert. Brauer does not really clarify whether he urges a violation of that statutory requirement or of the Due Process Clause.[5] Either way, the record makes it plain Judge Ginsberg gave Brauer more than an adequate opportunity to be heard on the question of his good faith.

In the first instance Brauer contends he was not given an opportunity to present evidence of his good faith at the November 19, 1986 hearing. He claims that "error" forced him to bring his motion to reconsider, thus shifting the burden to him to prove

---

**4.** Apparently Judge Ginsberg dismissed Brauer's Petition under Section 1112(b) and Fed.R.Civ.P. 41(b) (see Doc. 19 Tr. 2, 7–8), even though Trustee's motion was premised solely on Section 1112(b). Judge Ginsberg found Fed.R.Civ.P. 41(b) applied under Rule 7041 because Brauer's petition was a "contested proceeding" (Doc. 19 Tr. 2).

**5.** *Beshear v. Weinzapfel*, 474 F.2d 127, 133 (7th Cir.1973) suggested notice and a hearing are not always necessary before a case can be dismissed for want of prosecution. Section 1112(b)'s express requirement eliminates any question in that regard for current purposes.

he had acted in good faith. That characterization ignores what actually happened at the hearings of November 4 and 19 and the later February 10, 1987 hearing.

Trustee's September 29, 1986 notice to Brauer (Doc. 2) of Trustee's renewed dismissal motion (Doc. 3) adequately explained the reasons for the second motion to dismiss and was surely sufficient to inform Brauer what issues would be dealt with at the November 4 hearing on that motion. Trustee's notice listed three reasons for dismissal of Brauer's case with prejudice: his failure to file financial reports, his minimal cooperation with Trustee and his alleged misrepresentations.[6] Brauer's total failure to file even a single required biweekly report after March 14, 1986 was apparent from the case's docket sheets (attached to Doc. 3). All the reports Brauer *had* filed before that date were also made available to show those earlier reports were inadequate (Doc. 16 Tr. 4). Trustee claimed she could not supervise the case based on the information actually provided by Brauer (*id.* at 5).

Against that backdrop presented before and at the November 4 hearing, Judge Ginsberg asked Brauer if he had any evidence to produce. Brauer insisted he had tried to reach Trustee by telephone but that he had not brought his evidence of those phone calls with him (Doc. 16 Tr. 9). Rather than dismiss Brauer's petition—as he could well have done at that point—Judge Ginsberg gave Brauer an opportunity to "straighten out" all the problems raised by Trustee's motion, setting the next hearing for November 19. At that time the only issue to be considered would be whether or not everything was "straightened out" by then (including the timely filing of the next [November 15] Financial Reports). If not, Judge Ginsberg said he would summarily grant Trustee's motion to dismiss.

At the November 19 hearing Brauer admitted he still had not filed the overdue Financial Reports or the November 15 reports that had fallen due in the meantime. His bringing those documents with him plainly foreclosed Trustee's opportunity to have made sure all was in order—effectively the condition Judge Ginsberg had set. Accordingly Judge Ginsberg granted Trustee's motion. His November Order (Doc. 4) expressly found Brauer had failed to prosecute his case in good faith.

Brauer's motion to reconsider asked Judge Ginsberg to vacate that last finding. Brauer also asked for reconsideration of the dismissal of his Petition. He insisted he had not realized good faith would be an issue at the November hearings (Doc. 20 Tr. 6).

True enough, Trustee's motion had not literally spoken in terms of "lack of good faith" or "bad faith." That however makes no difference, for the motion was specifically based on Brauer's failure to comply with Trustee's requirements and Judge Ginsberg's orders. If Brauer had some excuse or explanation for those failures, he knew he had to be prepared to present that evidence at the November 4 hearing. That was his opportunity to be heard, and Brauer himself forfeited it by not being prepared.

As Judge Ginsberg explained on November 4, that left the only issues to be considered at the November 19 hearing (1) whether Brauer's post-November 4 filings had "straightened out" the problems created by his prior delinquencies and (2) whether he had complied with the interim filing requirement. Brauer's chance to present exculpatory evidence as to his earlier delinquencies had passed. There was no reason for Judge Ginsberg to hear such evidence on November 19.

As for Brauer's burden-of-proof contention, that really poses a false issue. Whether "burden of proof" is thought of as the burden of going forward or the burden of persuasion,[7] its only function is

---

**6.** Brauer admits he had at least 20 days notice of Trustee's motion as required by Rule 2002(a)(5) (Doc. 18 Tr. 92).

**7.** It is not entirely clear where Judge Ginsberg's treatment of the November Order placed the relevant burden. On the one hand, after he heard Brauer's claim of lack of notice, Judge Ginsberg agreed to vacate the November Order

that of a tie-breaker. Here Trustee's evidence established Brauer had never filed a report on time in more than two years—it had been March 1986 before the accumulated reports for far over a year were filed (and then only in the face of a motion to dismiss), and then another eight months of delinquencies followed. That evidence remained before Judge Ginsberg, even though the November Order itself was vacated. Brauer offered no evidence at all of any legitimate excuse for his violations, and the evidence and testimony presented by Brauer at the February 10 hearing wholly failed to counter Trustee's evidence. Indeed Judge Ginsberg found Brauer had actually reinforced the case for dismissing the Petition (Doc. 19 Tr. 4). In light of the record here, Brauer loses badly no matter who is viewed as having had the burden of proof.

Brauer also makes the absurd suggestion that Judge Ginsberg prevented him from being heard by not allowing him to confer with his counsel at the February 10 hearing. Because Brauer intended to testify at the hearing, another lawyer (Mitchell Lieberman ("Lieberman"))[8] made a limited appearance for the purpose of examining Brauer. Just the opposite of Brauer's scenario occurred: Judge Ginsberg saw Brauer and Lieberman were obviously not prepared to proceed immediately and therefore allowed a two-hour recess, during which they were expected to confer and prepare their case (Doc. 20 Tr. 21–22).

Despite that grant of a generous accommodation for Brauer's own lack of preparation, Brauer wanted more and asked to confer with Lieberman several times during Brauer's testimony. Judge Ginsberg properly denied those requests (see, e.g., Doc. 18 Tr. 16). Brauer had no right repeatedly to interrupt his own testimony to tell Lieberman what questions to ask him.

Such preparation should precede a hearing, not interfere with one.

In sum, Judge Ginsberg bent over backwards to give Brauer a full opportunity to be heard on the question of his good faith. If Brauer's rights were in any way prejudiced, the fault was Brauer's and not Judge Ginsberg's.

### Findings of Fact

Brauer claims several of Judge Ginsberg's underlying findings of fact, as well as his ultimate finding as to Brauer's not having prosecuted his case in good faith, are clearly erroneous. Again Brauer is wrong.

 Brauer rightly contends Judge Ginsberg's finding of bad faith required a subjective inquiry in this instance. Although objective bad faith can also be a basis for dismissing a petition under Section 1112(b) (see *In re Mandalay Shores Cooperative Housing Association, Inc.*, 63 B.R. 842, 847–49 (N.D.Ill.1986)), here the dismissal for Brauer's failure adequately to prosecute his case required an examination of his subjective good faith. But Brauer is mistaken in the notion that such an inquiry restricted Judge Ginsberg to Brauer's own evaluation of his intent. As with every factual finding dependent on subjective intent (what goes on in a person's head), Judge Ginsberg could infer from other objective evidence in the record that Brauer had proceeded in bad faith.

 Brauer was well aware of the Rule X–1007 requirement that he file biweekly Financial Statements with Trustee. In fact he admitted that knowledge at the November 4 hearing (Doc. 16 Tr. 5), and he later admitted he had obtained several copies of Trustee's standard procedures containing that requirement (Doc. 18 Tr. 82–84).

---

*in its entirety* and to allow Brauer to present any evidence he had on Trustee's motion (Doc. 20 Tr. 16). That would normally serve to reimpose Trustee's burden of proof on his motion to dismiss. On the other hand, Judge Ginsberg's later reference (Doc. 18 Tr. 128) seems at odds with that notion. But as the text explains, it really does not matter in the state of the evidence here.

**8.** At the February 10, 1987 morning hearing, the transcript reflects Lieberman's having identified himself as "Richard" (Doc. 20 at 16–17). At the extended afternoon hearing the same day the transcript shows "Mitchell" (Doc. 18 at 3). This Court's law clerk has confirmed the correctness of the latter.

Brauer also knew Trustee's motions to dismiss or convert were based in material part on Brauer's failure to file such statements.

Despite that knowledge, Brauer still failed to file his past-due statements after receiving each of Trustee's motions. His March 1986 filings were made under threat of dismissal from Judge Ginsberg, and in November he utterly failed to comply with Trustee's requirements and Judge Ginsberg's order within the time specified by Judge Ginsberg. That state of affairs amply supports Judge Ginsberg's finding Brauer had never filed a Financial Report on time, in turn evidencing his failure to prosecute his case in good faith.[9]

Brauer insists Judge Ginsberg's finding of bad faith is inconsistent with Judge Ginsberg's earlier findings and orders and the Rule X–1007 requirement that Brauer:

> cooperate with the United States Trustee by furnishing such information as the United States Trustee may reasonably require in supervising the administration of the estate.

Brauer argues Judge Ginsberg somehow excused him from complying with Trustee's usual reporting requirements and ruled Brauer would be acting reasonably if he filed financial reports in March and November of 1986. Because Brauer did so in March and was prepared to do so on November 19 (though not earlier), he urges he did not violate Rule X–1007. Again that misrepresents what Judge Ginsberg actually said and did. At the risk of some repetition, the bidding must be reviewed in that respect.

On February 18, 1986 Judge Ginsberg ordered Brauer to file all his past-due Financial Reports by March 4. When Brauer then appeared to have complied substantially with that order, Judge Ginsberg found Brauer had made a good faith attempt to comply and hence denied dismissal of the Petition. What Judge Ginsberg did *not* do was (1) find Brauer had prosecuted his case in good faith during the extended period of his total delinquency or (2) find Brauer had acted reasonably under Rule X–1007 during that same period or (3) excuse Brauer from filing monthly and biweekly reports in the future. All he found was that Brauer's good faith attempt to comply with his order sufficed to avoid dismissal at that time (Doc. 15 Tr. 4).[10]

On November 4, 1986 Judge Ginsberg was confronted with a situation in which Brauer had again failed to file a single report since March 14 (an unbroken string of 15 straight Financial Report delinquencies) *and* had failed to remedy deficiencies in the one earlier bulk filing. Judge Ginsberg gave Brauer a deadline and a mandate: Brauer was ordered to have "straighten[ed] everything out" with Trustee by the time of the next (November 19) court date and to file every future report on time if he wanted to avoid dismissal of his Petition. Brauer appeared before Judge Ginsberg November 19 with his past-due reports in hand, unfiled. He had not spoken with Trustee since November 4 and he had not filed the report due November 15.

On November 19 Brauer admitted he had violated the November 4 order,[11] but he now claims he in fact complied with that order by appearing in court on November 19 with his unfiled reports. That assertion

---

**9.** Brauer had also failed to communicate with Trustee to remedy the deficiencies in Brauer's earlier filings. On November 4 Judge Ginsberg clearly specified it was Brauer's responsibility to reach Trustee and not vice versa (Doc. 16 Tr. 8, 9).

**10.** Judge Ginsberg's March 14, 1986 decision not to dismiss Brauer's Petition because of his repeated failure to comply with the Rules was not a waiver of those violations or an expression of Judge Ginsberg's satisfaction with Brauer's performance to that point. That is evidenced by Judge Ginsberg's without-prejudice denial of Trustee's motion (Doc. 15 Tr. 4). Though the

past violations could not be revisited as the sole ground for a later dismissal, Judge Ginsberg made it plain they could and would come back to haunt Brauer if he continued to ignore the Rules.

**11.** At that Hearing Brauer said he believed he had until November 18, 1986 to file his past due reports, but that he had not done so. For the reasons next stated in the text, Judge Ginsberg disagreed with Brauer's misreading of the Judge's November 4 ultimatum. In any case, though, Brauer had violated even his own stated understanding of that order (Doc. 17 Tr. 3–4).

is flawed because it focuses only on the deadline date without examining what Brauer was required to do before that deadline.

Simply handing Trustee the past-due Financial Reports on November 19 failed in three respects to "straighten everything out." First, Trustee had no opportunity to have reviewed the reports before the November 19 hearing to determine whether they did the job required of such reports— an important element, given Brauer's prior deficiencies.[12] Second, Brauer's claimed "compliance" failed even to address the deficiencies claimed by Trustee in the reports filed in March. And third, Brauer wholly ignores his failure to file the report due November 15 on time, a clear violation of Judge Ginsberg's November 4 order.

Even under Brauer's reading of Rule X–1007's requirements, then, he violated that rule by violating Judge Ginsberg's order. That violation and Brauer's earlier conduct fully support Judge Ginsberg's finding in the November Order that Brauer had not prosecuted his case in good faith.

On rehearing Brauer was generously given a second chance to refute Trustee's evidence of bad faith. But Judge Ginsberg then found Brauer's additional evidence had actually reinforced the Judge's earlier finding and caused him to conclude Brauer had willfully violated the Rules and acted in bad faith. Because Brauer challenges that conclusion and Judge Ginsberg's treatment of his evidence, a rehearsal of that evidence too is necessary.

At the February 10, 1987 hearing Brauer testified he had made several unsuccessful attempts to telephone Trustee to "straighten things out" before the November 4 and 19 hearings. He claimed Trustee did not return Brauer's calls and was thus responsible for any problems with his filings. Brauer also introduced into evidence his

time records to show he had been diligently prosecuting his case.

Brauer Mem. 9 admits his records did not completely corroborate his claimed attempts to reach Trustee. Moreover his records showed he spent *34* hours on two days (November 18 and 19!!) in preparing his post-due Financial Reports (Doc. 18 Tr. 109). Judge Ginsberg compared that frenzy of activity to a college "all-nighter" (Doc. 19 Tr. 5). Brauer's records showed no other significant amount of time between March 14 and November 18 in the preparation of Financial Reports.

Brauer insisted his records were wrong—that he had actually tried to reach Trustee and had been diligently prosecuting his case. Yet when Judge Ginsberg asked him to point to any other such errors in his time records, Brauer pointed only to the single entry for March 3, 1986 (the day before he had to file reports to comply with an earlier order by Judge Ginsberg). That entry showed he had spent over 11 hours on March 3 preparing Financial Reports (Doc. 18 Tr. 112).

According to Brauer, the entries in his time records showing long periods of work immediately before deadlines set by Judge Ginsberg were errors, while the absence of other entries reflected unexplainable omissions. Brauer wanted Judge Ginsberg to believe his testimony but to ignore the time records, evidence Brauer himself introduced.

Judge Ginsberg declined to credit that variation on the "Shoemaker and the Elves" fairy tale. Instead the Judge found Brauer's testimony was not credible in light of his own time records. Judge Ginsberg reached the only rational conclusion: Brauer had filed and would file the required financial reports only in the face of threats of dismissal (Doc. 19 Tr. 5–7).[13] Those factual findings are fully supported

---

12. Indeed, a filing of the past-due reports by November 18 (see n. 11) would not have afforded Trustee a reasonable chance for review and for Brauer's correction of any perceived deficiencies.

13. Brauer's time records also flatly contradicted his November 4 claim that the reports were

already prepared (Doc. 16 Tr. 5), and his November 19 suggestion that the reports were ready to be filed on November 18 (Doc. 17 Tr. 2). Such deliberate misrepresentations (by a *lawyer*–debtor) buttress the finding of Brauer's bad faith.

by the evidence and, considered with the other evidence of record, themselves fully support Judge Ginsberg's conclusions that Brauer willfully violated the Rules and had not prosecuted his case in good faith.

### Dismissal of the Petition

Judge Ginsberg had the discretionary power under Section 1112(b) and Fed.R.Civ. P. 41(b) to dismiss Brauer's Petition as a sanction for his failure to comply with court orders and required procedures (*Mandalay Shores*, 63 B.R. at 847–48).[14] Even though such a dismissal may be reversed only if it is an abuse of that discretion, in practice such dismissals with prejudice—the ultimate sanction—receive close scrutiny on appeal (see *Roland*, 811 F.2d at 1177 and 9 Wright & Miller, *Federal Practice and Procedure: Civil* § 2369, at 193–94 (1971)).

Judge Ginsberg did not clearly indicate whether he was dismissing Brauer's petition with prejudice,[15] but under Fed.R. Civ.P. 41(b) judicial dismissals are with prejudice unless the court evidences a different intention. Furthermore, Judge Ginsberg's finding that Brauer had willfully violated the Rules would appear to bar Brauer from refiling his Petition (see Section 109(g); *Krattiger*, 52 B.R. at 384–85).[16]

■ Dismissals with prejudice are upheld (*Roland*, 811 F.2d at 1177):

> only when there exists a clear record of delay or contumacious conduct or when less drastic sanctions have proven ineffective.

In relatively young cases [17] or where a litigant is proceeding pro se or where there has been no warning that the case may be dismissed with prejudice, a court should be especially inclined to consider lesser sanctions (*id.* at 1177 n. 3). But even in "young" cases some litigants have been successful in establishing a "clear record of delay or contumacious conduct" so as to justify dismissal without the prior imposition of lesser sanctions (*Palmer*, 814 F.2d at 429 n. 5). However, absent such a record (*Schilling v. Walworth County Park & Planning Commission*, 805 F.2d 272, 275 (7th Cir.1986) (citations omitted)):

> the careful exercise of judicial discretion requires that a district court consider less severe sanctions and explain, where not obvious, their inadequacy for promoting the interests of justice.

Finally, when a bankruptcy judge is asked to dismiss or convert a case under Section 1112(b), he or she should consider which option best protects the interests of all the creditors (*In re Larmar Estates, Inc.*, 6 B.R. 933, 937 (Bankr.E.D.N.Y.1980)).

■ Judge Ginsberg did dismiss Brauer's 30–month-old petition [18] without first resorting to lesser sanctions and without expressly considering whether dismissal was in the creditors' best interests. In the circumstances of this case, those "omissions" were not an abuse of discretion under the just-stated principles.

Trustee brought her motions to dismiss or convert because Brauer's persistent failure to comply with the Rules made it impossible to supervise the case. Without

---

**14.** As Judge Ginsberg explained, Section 1112(b) allowed him to dismiss the Petition for "cause." That section gives a non-exclusive list for what can constitute cause. Although bad faith evidenced by a failure to obey the Rules and court orders is not specifically listed, *Mandalay Shores* holds such behavior is cause for dismissal under Section 1112(b) just as it is for any civil action. For example, *In re Krattiger*, 52 B.R. 383 (W.D.Wis.1985) dismissed the debtor's petition because of a ten-day delay in complying with a court order to file financial reports—as in this case, after a series of earlier delays.

**15.** Judge Ginsberg did forewarn Brauer on November 4 that the Judge might dismiss the Petition with prejudice (Doc. 16 Tr. 10).

**16.** That no doubt explains why Brauer moved for reconsideration of the dismissal and in the alternative to vacate the finding of lack of good faith.

**17.** "Young cases" apparently can mean cases up to two years old (see *Palmer v. City of Decatur*, 814 F.2d 426, 429 (7th Cir.1987)).

**18.** Brauer filed his Petition April 12, 1984 and it was dismissed November 19, 1986. It is unnecessary to decide whether it should be characterized as a "young case," for even a "young case" could properly be dismissed on the record here.

such supervision Brauer's Chapter 11 case simply operated to stay his creditors, with no one having any control over his management of his own affairs, at the same time allowing him to pursue adversary proceedings against them (Doc. 19 Tr. 6). No protection was really afforded the creditors. And there was nothing to indicate Brauer would have offered any more cooperation under Chapter 7 than under Chapter 11.

Several of Brauer's creditors were represented at the hearings on Trustee's motions. None voiced any opposition to Judge Ginsberg's clearly expressed intent to dismiss Brauer's Petition. This is not a case where one creditor seeks to convert or dismiss a case at the expense of others. Rather this is a case where a debtor used and abused the Code to serve his own purposes. Allowing further abuses would not have been in his creditors' best interests, and Judge Ginsberg was not required to articulate expressly why dismissal was preferable to conversion.

Nor was it necessary for Judge Ginsberg to resort to lesser sanctions before dismissing the Petition. Although Brauer was proceeding pro se, he is himself an attorney [19] and (as such) not entitled to the special considerations given pro se litigants (see *Palmer*, 814 F.2d at 429). Brauer had received ample warning Judge Ginsberg was considering dismissing the Petition (Doc. 16 Tr. 10). Finally—again at the risk of repetition—during the 30–month life of his Petition Brauer did not file a single biweekly Financial Report on time, and his records showed he did not even work on any such reports except for the two times he was under the gun of the threatened dismissal of his Petition.[20] That

clear record of contumacious conduct fully justified the dismissal of the Petition (see *Roland*, 811 F.2d 1178–79).

### Conclusion

Judge Ginsberg's findings that Brauer had not prosecuted his case in good faith were fully supported by the evidence. Brauer had more than an adequate opportunity to be heard on that issue. Brauer's lack of good faith established a record of contumacious conduct that completely justified Judge Ginsberg's dismissal of the Petition. Both Judge Ginsberg's orders are affirmed.

---

**19.** Indeed, Brauer's Chapter 11 Petition sought reorganization of his practice as a lawyer.

**20.** Although this opinion has focused on Brauer's violations of Rule X–1007, that was not the only Rule he violated. Rule 1007(b) and (c) required Brauer to file a schedule of assets and liabilities within 15 *days* of the filing of his Petition. Brauer actually filed that schedule March 4, 1986, some 23 *months* after his Petition. Nevertheless he misrepresented at the November 19 hearing that he had filed his sched-

ules on time (Doc. 17 Tr. 6). Brauer plainly doesn't think either the Rules or (to paraphrase a famous Sam Goldwynism) his own oral statements are worth the paper they're printed on. For the generation (or generations) of readers who were not brought up on the Sayings of Chairman Sam, one of his famous malapropisms was the statement (spoken of a fellow movie mogul, an actor or an actor's agent):

His oral promise isn't worth the paper it's written on.